# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DEBRA DANIELS and** | ) | |
| **DENNIS DANIELS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **NO. _____** |
| **v.** | ) | |
| | ) | **Removed from Circuit Court** |
| **ERIE INSURANCE GROUP,** | ) | **for Sumner County, Tennessee** |
| | ) | |
| **Defendant.** | ) | |

---

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332 and 1441, Erie Insurance Group ("Erie")[1] hereby provides notice of removal of this action from the Circuit Court for Sumner County, Tennessee. As grounds for removal, Erie states as follows:

1.      This action was commenced on or about June 30, 2016, in the Circuit Court for Sumner County, Tennessee styled <u>Debra Daniels and Dennis Daniels v. Erie Insurance Group</u>, Case Number 83CC1-2016-CV-696. A copy of all process, pleadings and discovery filed in the Circuit Court for Sumner County, Tennessee and served upon Erie are attached hereto as <u>Exhibit A</u>.

2.      A copy of the Complaint was served on Erie on July 6, 2016 through the Tennessee Commissioner of Insurance's office. Erie is filing this Notice of Removal within

---

[1] The true insuring entity for plaintiffs is Erie Insurance Company. Erie assumes this is simply a misnomer and the pleadings will be amended at a later date so as to reflect the proper insuring entity.

thirty (30) days after receiving copies of the Summons and Complaint. This Notice of Removal is timely filed under 28 U.SC. § 1446(b).

3.     This Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).

4.     Plaintiffs, Debra Daniels and Dennis Daniels, are residents and citizens of the State of Tennessee, having their residence, based upon information and belief, in Portland, Sumner County, Tennessee.

5.     Erie is a Pennsylvania company with its principal office located at 100 Erie Insurance Place, Erie, Pennsylvania 16530.

6.     The Complaint contemplates an amount in controversy in excess of $75,000, exclusive of interest and costs, in that plaintiffs specifically seek compensatory damages of $158,800, plus attorneys' fees and a bad faith penalty award.

7.     The United States District Court for the Middle District of Tennessee, Nashville Division, is the district and division embracing Sumner County, Tennessee, the place where the state court action was pending. 28 U.S.C. § 1441(a).

8.     Upon filing this Notice of Removal, Erie is giving notice to plaintiffs and to the Circuit Court Clerk of the Circuit Court of Tennessee, Eighteenth Judicial District, Sumner County, Tennessee, as required by 28 U.S.C. § 1446(d). A copy of the Notice to be served on plaintiffs and the Clerk of the Sumner County Circuit Court is attached hereto as Exhibit B.

WHEREFORE, take notice that Erie Insurance Group, by and through their counsel, removes the above-entitled action from the Circuit Court for Sumner County, Tennessee to the United States District Court for the Middle District of Tennessee, Nashville Division.

Respectfully submitted,

_____

Christopher M. Jones (#022142)
LeVAN, SPRADER, PATTON, PLYMIRE & OFFUTT
201 Fourth Avenue North, Suite 1500
Nashville, TN 37219
(615) 843-0300 phone
(615) 843-0310 fax
cjones@lsplaw.net
*Attorney for Defendant, Erie Insurance Group*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via electronic mail and First Class Mail, postage prepaid, addressed to the following on this 29th day of July, 2016.

Thomas W. Thompson
Smith, Kling & Thompson, P.A.
4725 North Lois Avenue
Tampa, Florida 33614
(tthompson@SmithKling.com)
*Attorney for Plaintiffs*

_____

Christopher M. Jones

 **ORIGINAL**

Summons–Civil Action

# STATE OF TENNESSEE
## 18th JUDICIAL DISTRICT
### Circuit Court Sumner County, Tennessee

☑ Original
☐ Alias
☐ Pluries

Debra Daniels et vir

_____

_____

**Plaintiff(s)**

vs. Case # 83CC1-2016-CV- 696

ERIE INSURANCE COMPANY

c/o Commissioner of Insurance

Nashville, TN. 37243-1131

**Defendant(s)**

☐ Local Sheriff
☐ Out of County
☐ Sec. of State
☑ Comm. of Ins.
☐ Attorney
☐ Certified Mail

**TO THE ABOVE NAMED DEFENDANT(S):** ERIE INSURANCE GROUP

You are hereby summoned to appear and defend a Civil Action filed against you in the Circuit Court, Sumner County, Tennessee; and your defense must be made within thirty (30) days from the date this summons is served upon you, exclusive of the day of service. You are further directed to file your defense with the Clerk of this Court and send a copy to the Plaintiff's Attorney, Thomas W. Thompson, Smith, Kling & Thompson, P.A. _____ whose address is 4725 N. Lois Ave. Tampa, FL. 33614 _____. In case of your failure to defend this action by the above date, judgment by default can be rendered against you for the relief demanded in the complaint.

**TO THE SHERIFF:** Execute this summons and make your return herein as provided by law.

**WITNESS, Kathryn Strong,** Clerk of the Circuit Court at Office in Gallatin, Tennessee.

Issued: _July 1_____, 20_16_.

KATHRYN STRONG, CLERK

By: _____ D.C.

_____

**RECEIVED THIS SUMMONS FOR SERVICE, THIS** ____ **DAY OF** _____, 20 ___

_____

Deputy Sheriff

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20 ____, I served this summons together with a copy of the complaint herein as follows:

_____

_____

**RECEIVED**
7 25 16

_____

SHERIFF - DEPUTY SHERIFF

**EXHIBIT**

**A**

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20 ____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Case No. _____ to the defendant, _____.

On the _____ day of _____, 20 ___, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20 _____. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON
THIS _____ DAY OF _____ , 20 ___

_____

_____NOTARY PUBLIC or ____DEPUTY CLERK
My Commission Expires: _____

**PLAINTIFF/PLAINTIFF'S ATTORNEY OTHER
PERSON AUTHORIZED BY STATUTE TO SERVE
PROCESS**

## _____NOTICE_____

**TO THE DEFENDANT(S):**

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

*ATTACH
RETURN RECEIPT
HERE
(IF APPLICABLE)*

**STATE OF TENNESSEE**

**COUNTY OF SUMNER**

*(To be completed only if
copy certification required.)*

I, **Kathryn Strong, Clerk of the Circuit Court** in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

**Kathryn Strong, Clerk**

By: _____

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

July 07, 2016

Erie Insurance Company
100 Erie Insurance Place, % T. Cavanaugh
Erie, PA 16530-0001
NAIC # 26263

Certified Mail
Return Receipt Requested
7015 0640 0007 0044 3599
Cashier # 26683

Re:   Debra Daniels, Et Vir   V.   Erie Insurance Company

Docket # 2016-Cv-696

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served July 06, 2016, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Sumner County
    P O Box 549
    Gallatin, Tn 37066

IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE

FILED
3:35 PM
JUN 30 2016
KATHRYN STRONG, CLERK
BY_____ D.C.

|  |  |  |
|---|---|---|
| DEBRA DANIELS and | ) | |
| DENNIS DANIELS, | ) | **JURY DEMAND** |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | *83cc1-2016·CV-696* |
| | ) | |
| ERIE INSURANCE GROUP | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, **DEBRA DANIELS and DENNIS DANIELS,** for their Complaint against the

Defendant, **ERIE INSURANCE GROUP,** ("Defendant"), would respectfully show and allege

to the Court as follows:

### PARTIES AND JURISDICTION

1.      Plaintiffs, DEBRA DANIELS and DENNIS DANIELS, own and reside at the

property located at 343 S. Leath Rd., Portland, TN 37148.

2.      Defendant, ERIE INSURANCE GROUP, is a for-profit foreign insurance

company authorized to engage in, and does engage in, the sale and delivery of property insurance

within the State of Tennessee.   The registered agent for service of process of ERIE

INSURANCE GROUP is the Tennessee Department of Commerce and Insurance, 500 James

Robertson Parkway, Nashville, Tennessee, 37243.

3.      Plaintiffs' claim for relief arises from a covered loss to their property located at

343 S. Leath Rd., Portland, TN 37148. (the "Property").  Venue is proper pursuant to Tenn. Code

Ann. § 20-4-103.

# FACTS

4.    At all times material hereto, Plaintiffs have been the owner of the Property.

5.    Plaintiffs renewed or procured a policy of homeowners' insurance, policy number Q546401275 ("Policy"), from Defendant covering the above-referenced property. Attached hereto as **Exhibit A**.

6.    In consideration of monies paid by Plaintiffs to Defendant, the "all-risk" Policy was issued, insuring the Plaintiffs' property against all risks which are not excluded, including sinkholes. The insurance policy provided dwelling insurance coverage, in addition to other coverages.

7.    Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.    On or about July 28, 2015, while the Policy was in full force and effect, the dwelling located on the Property was damaged by a covered peril.

9.    A notice of loss and damages was properly and promptly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

10.    Plaintiffs have fulfilled all of the duties after the Loss that were imposed upon them by the Policy.

11.    Without consulting Plaintiffs in its choice of engineer, Defendant sent Rimkus Consulting Group, Inc., ("Rimkus") to Plaintiffs' Property who denied the damage to the Property was caused by sinkhole activity.

12.    Upon information and belief, the geotechnical engineering firm retained by Defendant, Rimkus, failed to comply with standard geotechnical engineering practices and

procedures in completing its inspection, testing, and evaluation of the damages to Plaintiffs' Property.

13. Defendant has taken the position that the damage to the Property consistent with sinkhole activity was not caused in fact by sinkhole activity on the Property.

14. On or about February 1, 2016, Defendant sent correspondence denying Plaintiffs' claim based on the Rimkus reports.

15. On or about March 15, 2016 Plaintiffs, through counsel, sent a Formal Demand to Defendant requesting that Defendant consider all of the evidence in order to make an informed decision concerning the Plaintiffs' Property and the claim and that the full amount be paid. Attached hereto as **Exhibit B.**

16. Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained. Defendant's refusal to promptly and fully pay Plaintiffs the amounts owed as a result of the Loss is without justification.

17. Defendant's refusal to pay the money and benefits due and owing Plaintiffs under the Policy has caused Plaintiffs to seek legal counsel and pay them a reasonable fee for their services, and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which they are entitled.

## BREACH OF CONTRACT

18. Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 18 above as though fully set forth herein.

19. The Policy issued by Defendant to Plaintiffs is a binding contract, and is supported by valid consideration.

20.     Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the covered damage caused to the Property.  Specifically, Defendant's breach of contract includes its failure and refusal to pay all amounts owed to Plaintiffs for the damage to the Property and its failure and refusal to pay all amounts owed to Plaintiffs for all benefits due under the Policy.  Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

21.     As a result of Defendant's breach of contract, Plaintiffs have sustained substantial compensable losses for the amounts claimed under the Policy.  Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss.

22.     Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages.  *See, e.g., Riad v. Erie Ins. Exchange*, 2013 Tenn. App. LEXIS 712, *47 (Tenn. Ct. App. Oct. 31, 2013).  Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to properly investigate the Property as required under the Policy and state statute; (2) failed to effectuate a prompt and fair settlement of Plaintiffs' claim when liability was clear; (3) unjustly refused and/or failed to pay Plaintiffs' claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim; (5) failed to investigate the Plaintiffs' claim in a prompt and thorough manner; (6) represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the

Defendant knew or should have known that it did not exclude coverage and (7) engaged in such acts as are set forth in paragraphs 26 and 27 below. Plaintiffs seek, and are entitled to, punitive damages.

## BAD FAITH

23. Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

24. Defendant's failure and refusal to pay the amounts owed to Plaintiffs is arbitrary and capricious and is not in good faith, and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for Plaintiffs' covered loss as required by the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked. Defendant's bad faith failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

25. The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth more fully below. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously refused to fully pay Plaintiffs' valid claim and withheld monies and benefits rightfully due Plaintiffs. The acts and/or omissions of Defendant constitute bad

faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

    (A)    Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

    (B)    Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner;

    (C)    Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims;

    (D)    Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim;

    (E)    Defendant's intentional refusal to pay Plaintiffs' claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

    (F)    Defendant's intentional refusal to fully investigate Plaintiffs' claim and to obtain all available information before denying the claim and alleging it has no further obligations to Plaintiffs;

    (G)    Defendant's engaging in acts and practices toward Plaintiffs that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiffs;

    (H)    Defendant's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis; and

    (I)    Defendant's use of biased and unqualified "experts" to avoid its contractual obligations to Plaintiffs.

    26.    Defendant's bad faith is further evidenced by the all of the facts and allegations set forth in this Complaint, together with the following non-exclusive facts:

-    Defendant failed to advise Plaintiffs that it regularly hires Rimkus to conduct outcome-oriented investigations on homeowners' properties.

-    Defendant's engineer, Rimkus, failed to perform an initial subsidence investigation adequate to eliminate the existence of sinkhole activity within a reasonable degree of professional probability.

-    Defendant regularly hires the same outcome-oriented engineers in order to achieve its desired "engineering" outcome.

27.     In so acting, Defendant intended to and did injure Plaintiffs in order to protect its own financial interests, and should be punished via the twenty-five percent (25%) statutory bad faith penalty.

28.     Although Defendant is aware of Rimkus' flawed findings, Defendant blindly adopted Rimkus' inappropriate recommendation to the Property in an intentional placement of its own financial interests before Plaintiffs' interest in safeguarding their home.

29.     As discovery and depositions progress, Plaintiffs anticipate additional bad faith acts and/or omissions will come to light.

30.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds.  A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith.  In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, as a result of the foregoing, Plaintiffs would respectfully request that this Honorable Court award a judgment to Plaintiffs as follows:

A.     For compensatory damages against Defendant not to exceed $158,800.00;

B.     For the statutory bad faith penalty not to exceed 25% of Plaintiffs' claim under the Policy;

C.     For all costs incurred by Plaintiffs as a result of this action;

D.     For pre- and post-judgment interest; and

E.      For such other further and general relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By:   s/Thomas W. Thompson

*Smith, Kling & Thompson, P.A.*
Thomas W. Thompson, Esquire
thompson@smithkling.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone: (813) 254-1800
Facsimile: (813) 254-1844
Attorney for Plaintiffs


**Erie Insurance®**

Member Company
**Erie Insurance Company**

Home Office • 100 Erie Insurance Place • Erie, Pennsylvania 16530 • 814.870.2000
Toll free 1 800.458.0811 • Fax 814.870.3126 • erieinsurance.com

TN116-2295

FILED
2:25  ₚM

JUN 30 2016

KATHRYN STRONG, CLERK
BY_____D.C.

April 20, 2016

Thomas W. Thompson, Esq.
Smith, King, Thompson
4725 N. Lois Ave.
Tampa, FL 33614

> Re: **ERIE Claim**    #010810147611
> **ERIE Policy**   #Q54 6401275
> **ERIE Insured:** **Dennis J. Daniels Sr. &**
>                   **Debra Daniels**
> **Date of Loss:**  **July 28, 2015**

Dear Attorney Thompson:

I am Veronica Walters, Property & Casualty Records Coordinator for the Erie Insurance Group. I hereby certify that on July 28, 2015 the enclosed Declarations, policy form and endorsements were in effect under ERIE Policy Number Q54 6401275. These are true likenesses of the documents issued to Dennis J. Daniels Sr. and Debra Daniels.

Sincerely,

*Veri Walters*

Veronica Walters
P & C Records Coordinator
Litigation/Claims Examination Dept.
(814) 870-5682

/vw
Enclosures

Sworn to and subscribed before me

this 21·st day of April, 2016.

*Kevin F. Nelson*
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kevin F. Nelson, Notary Public
City of Erie, Erie County
My Commission Expires July 14, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**EXHIBIT**

A

The ERIE is Above All in SERVICE® • Since 1925



BLGRP

Erie
Insurance
Group
100 Erie Ins. Pl
Erie, PA 16530

**ERIE INSURANCE COMPANY**
**ERIESECURE HOME POLICY**

CONTINUATION NOTICE

| AGENT | ITEM 2. POLICY PERIOD | POLICY NUMBER |
|---|---|---|
| HH1426  VANDENBERGH INS AGENCY | 06/14/15 TO 06/14/16 | Q54 6401275 VT |

| ITEM 1. NAMED INSURED AND ADDRESS | ITEM 3. OTHER INTEREST |
|---|---|
| DENNIS J DANIELS SR & <br> DEBRA DANIELS <br> 343 S LEATH RD <br> PORTLAND TN  37148-5341 | AS LISTED BELOW <br> OR ON REVERSE SIDE |

AGENT - VANDENBERGH INS AGENCY             260 W MAIN ST STE 221B
*****
AGENT PHONE - (615) 824-8899              HENDERSONVILLE TN 37075 7312

COVERAGE BEGINS AND ENDS AT 12.01 AM STANDARD TIME AT THE LOCATION OF THE
INSURED PROPERTY.  UNTIL TERMINATED, THIS POLICY WILL CONTINUE IN FORCE.

LOCATION OF RESIDENCE PREMISES.    ZIP CODE - 37148  5341
343 S LEATH RD PORTLAND TN.

PROPERTY INFORMATION - PRIMARY RESIDENCE - OWNER OCCUPIED DWELLING, YEAR OF
CONSTRUCTION 1999, FRAME.

AUTOMATIC ADJUSTMENT OF COVERAGE WAS APPLIED TO DWLG.

COVERAGE IS PROVIDED ONLY IF A SPECIFIC AMOUNT OF INSURANCE IS SHOWN.

| SECTION I - PROPERTY PROTECTION | AMOUNT OF INSURANCE | PREMIUMS |
|---|---|---|
| DWELLING | $  158,000 | $   938.00 |
| OTHER STRUCTURES | $   31,600 | |
| PERSONAL PROPERTY | $  118,500 | |
| LOSS OF USE | LOSS SUSTAINED NOT TO | |
| | EXCEED 12 CONSECUTIVE MONTHS | |

SECTION II - HOME AND FAMILY LIABILITY PROTECTION
PERSONAL LIABILITY       - EACH OCCURRENCE    $  500,000
MEDICAL PAYMENTS TO OTHERS - EACH PERSON      $    1,000
           FULL TERM PREMIUM FOR THIS RESIDENCE - - - - - -    $   938.00
           TOTAL PREMIUM FOR THIS POLICY  - - - - - - - - -    $   938.00

SECTION I DEDUCTIBLE       $ 1500.
APPLICABLE FORMS - ESH 06/11, ES00209 01/12, UFA301 09/11*, ES00010 06/11,
UF2106 04/08*, ES00579 01/12, UFA764 09/14*, UFB587 06/15*.

MORTGAGEE
LN 0473000297
WELLS FARGO BANK
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 100515
FLORENCE SC  29502-0515

                    SEE REVERSE SIDE            WFS        05/04/15

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 16 of 52 PageID #: 16

NO BUSINESS PURSUITS ARE CONDUCTED AT THE PREMISES, EXCEPT AS FOLLOWS -

APPLICABLE DISCOUNTS AND SELECTED ENDORSEMENTS                    PREMIUMS

HOME/AUTO MULTI-POLICY DISCOUNT                                   INCL ABOVE
REPLACEMENT COST LOSS SETTLEMENT - DWELLING COVERAGE             INCL ABOVE
YOUR PREMIUM REFLECTS SAVINGS DUE TO A HIGHER DEDUCTIBLE         INCL ABOVE
PREMISES ALARM SYSTEM                                            INCL ABOVE
ADVANCE QUOTE DISCOUNT APPLIES                                   INCL ABOVE



ErieSecure Home®
Insurance Policy

Erie Insurance

# WHERE TO LOOK IN YOUR POLICY

Page

AGREEMENT.................................. 2

GENERAL POLICY DEFINITIONS................. 2

PROPERTY PROTECTION—SECTION I............. 3
  OUR PROMISE—Dwelling Coverage.............. 3
  OUR PROMISE—Other Structures Coverage...... 3
  OUR PROMISE—Personal Property Coverage..... 3
  SPECIAL LIMITS—Personal Property Coverage.... 4
  OUR PROMISE—Loss Of Use Coverage.......... 5
  PERILS WE INSURE AGAINST—Dwelling And
  Other Structures Coverages................... 5
  EXCLUSIONS—What We Do Not Cover—Dwelling
  And Other Structures Coverages................ 5
  PERILS WE INSURE AGAINST—Personal
  Property Coverage........................... 7
  EXCLUSIONS—What We Do Not Cover—Personal
  Property Coverage........................... 7
  ADDITIONAL PAYMENTS...................... 9
    Automatic Garage Door Opener.............. 9
    Collapse.................................. 9
    Credit Card, Electronic Fund Transfer Card Or Access
    Device, Forgery Or Counterfeit Money Protection...... 10
    Debris Removal After Loss................. 10
    Emergency Removal Of Property............ 10
    Fire Department Service Charges........... 10
    Fire Extinguisher Recharge................ 10
    Fungi, Wet Or Dry Rot Or Bacteria Coverage.... 10
    Lock Replacement After Loss.............. 10
    Loss Assessment......................... 11
    Mechanical Servant And Robot Protection.... 11
    Nonowned Residences..................... 11
    Ordinance Or Law Coverage............... 11
    Temporary Repairs After Loss............. 12
    Trees, Shrubs, Plants And Lawns.......... 12
  DEDUCTIBLE.............................. 12

RIGHTS AND DUTIES—CONDITIONS—SECTION I.... 12
  ABANDONMENT OF PROPERTY............... 12
  APPRAISAL.............................. 12
  AUTOMATIC ADJUSTMENT OF COVERAGE AMOUNTS... 12
  ERIE OPTION............................ 13
  GLASS REPLACEMENT...................... 13
  INCREASE OF HAZARD..................... 13
  LAWSUITS AGAINST US.................... 13
  LOSS PAYMENT.......................... 13
  LOSS SETTLEMENT—Dwelling Coverage—Guaranteed
  Replacement Cost....................... 13

Page

LOSS SETTLEMENT—Other Structures Coverage—
Replacement Cost............................ 13
LOSS SETTLEMENT—Personal Property Coverage—
Replacement Cost............................ 14
LOSS TO A PAIR OR SET...................... 14
MORTGAGE CLAUSE........................... 14
NO BENEFIT TO BAILEE...................... 15
OTHER INSURANCE........................... 15
PERMISSION GRANTED TO YOU................. 15
RECOVERED PROPERTY........................ 15
WHAT TO DO WHEN A LOSS HAPPENS.......... 15

HOME AND FAMILY LIABILITY PROTECTION—SECTION II.. 15
  OUR PROMISE—Bodily Injury Liability Coverage And
  Property Damage Liability Coverage............ 15
  OUR PROMISE—Personal Injury Liability Coverage........ 16
  OUR PROMISE—Medical Payments To Others Coverage.... 16
  EXCLUSIONS—What We Do Not Cover........... 16
  ADDITIONAL PAYMENTS..................... 18
    Claim Expenses......................... 18
    Damage To Property Of Others............ 19
    First Aid Expenses...................... 19
    Loss Assessment........................ 19

RIGHTS AND DUTIES—CONDITIONS—SECTION II......... 19
  DUTIES OF AN INJURED PERSON—MEDICAL
  PAYMENTS TO OTHERS COVERAGE............. 19
  LAWSUITS AGAINST US.................... 19
  LIMITS OF PROTECTION................... 19
  OTHER INSURANCE........................ 20
  WHAT TO DO WHEN AN OCCURRENCE, OFFENSE,
  CLAIM OR SUIT HAPPENS.................. 20

RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS—
SECTIONS I & II............................ 20
  ACCOUNTING............................ 20
  ASSIGNMENT............................ 20
  BANKRUPTCY OF ANYONE WE PROTECT....... 20
  CANCELLATION AND NONRENEWAL........... 20
  CONCEALMENT, FRAUD OR MISREPRESENTATION...... 21
  CONTINUOUS POLICY...................... 21
  COOPERATION........................... 21
  HOW YOUR POLICY MAY BE CHANGED........ 21
  OUR RIGHT TO RECOVER FROM OTHERS...... 21
  PRIORITY.............................. 21
  SURVIVORS' COVERAGE................... 21
  TIME OF INCEPTION..................... 21
  WHEN AND WHERE THIS POLICY APPLIES.... 22

## THANK YOU

for choosing Erie Insurance for your home insurance needs. This policy contains many Xtra Protection Features. Wherever an "X" appears in the margin of this policy, you receive Xtra Protection that is not included in most other homeowners policies. The protection given by this policy is in keeping with the single purpose of our Founders which is "To provide YOU with as near PERFECT PROTECTION, as near PERFECT SERVICE, as is humanly possible, and to do so at the LOWEST POSSIBLE COST."

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 19 of 52 PageID #: 19

# AGREEMENT

In return for "your" timely premium payment and "your" compliance with all of the provisions of this policy, "we" agree to provide the coverages "you" have purchased. "Your" coverages and amounts of insurance are shown on the "Declarations," which are part of this policy.

This agreement is made in reliance on the information "you" have given "us," and is subject to all the terms of this policy.

This policy, with coverage agreements, limitations, exclusions and conditions, the "Declarations" and applicable endorsements and waivers, constitute the entire agreement between "you" and "us."

# GENERAL POLICY DEFINITIONS

*Throughout this policy and its endorsements, the following words and phrases have a special meaning when they appear in bold type and quotations.*

- "Aircraft" means any machine or device capable of atmospheric flight except model airplanes.
- "Anyone we protect" means "you" and the following "residents" of "your" household:
  1. relatives and wards; and
  2. other persons in the care of "anyone we protect."

Under PROPERTY PROTECTION–SECTION I, OUR PROMISE–Personal Property Coverage, OUR PROMISE–Loss Of Use Coverage, ADDITIONAL PAYMENTS (but only for Personal Property Coverage and Loss Of Use Coverage) and HOME AND FAMILY LIABILITY PROTECTION–SECTION II, "anyone we protect" also means:

  3. a Domestic Partner named on the "Declarations."

Under HOME AND FAMILY LIABILITY PROTECTION–SECTION II, "anyone we protect" also means:

  4. any person or organization legally responsible for animals or watercraft which are owned by "you," or any person included in Item 1. or 2. and covered by this policy. Any person or organization using or having custody of these animals or watercraft in the course of any "business," or without permission of the owner is not "anyone we protect;"

  5. any person with respect to any vehicle covered by this policy. Any person using or having custody of this vehicle in the course of any "business" use, or without permission of the owner is not "anyone we protect."

- "Bodily injury" means physical harm, sickness or disease, including mental anguish or resulting death, but does not include:

  1. any communicable disease or condition transmitted by "anyone we protect" to any other person through a parasite, virus, bacteria or any other organism.

  2. the exposure to or transmission of any disease, parasite, virus, bacteria or other organism by "anyone we protect" to any other person.

- "Business" means any full-time, part-time or occasional activity engaged in as a trade, profession or occupation, including farming.

- "Declarations" means "our" form which shows "your" coverages, amounts of insurance, premium charges and other information.

  This form is part of this policy. "Declarations" include forms titled Amended Declarations, Revised Declarations, Duplicate Declarations, New Declarations, Reinstatement of Coverage or Continuation Notice.

- "Fungi" means any type or form of fungus, including but not limited to molds, mildews, smuts, mushrooms, yeasts and any mycotoxins, spores, scents, vapors, gases or byproducts produced by, arising out of or released by any type or form of fungus.

  Under HOME AND FAMILY LIABILITY PROTECTION–SECTION II, "fungi" does not include any type or form of "fungi" that are, are on, or are contained in any good or product intended for consumption.

- "Insured location" means:
  1. the "residence premises;"
  2. the part of any other premises, other structures, and grounds acquired by "you" during the policy period which "you" intend to use as a "residence premises;"
  3. any premises used by "anyone we protect" in connection with premises included in Item 1. or 2.;
  4. any part of a nonowned premises:
     a. where "anyone we protect" is temporarily residing; or
     b. occasionally rented to "anyone we protect" for purposes not related to any "business;"
  5. vacant land, other than farmland, owned by or rented to "anyone we protect;"
  6. land owned by or rented to "anyone we protect" on which a one or two family residence is being built for occupancy by "anyone we protect;" and
  7. cemetery plots or burial vaults of "anyone we protect."

- "Medical expense" means reasonable charges for necessary medical, surgical, x-ray and dental services, including prosthetic devices, eyeglasses, contacts, hearing aids and pharmaceuticals; and also includes ambulance, hospital, licensed nursing and funeral services.

- "Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions.

- "Personal injury" means injury arising out of:
  1. libel, slander or defamation of character;

2

2. false arrest, wrongful detention or imprisonment, malicious prosecution;

3. racial or religious discrimination;

4. wrongful entry or eviction, invasion of privacy; or

5. humiliation caused by any of these.

- "Property damage" means:

  1. physical injury to or destruction of tangible property, including loss of its use. All such loss of use will be deemed to occur at the time of the physical injury that caused it; and

  2. loss of use of tangible property which is not physically injured or destroyed. All such loss of use will be deemed to occur at the time of the "occurrence."

- "Replacement cost" means:

  1. in the case of loss or damage to buildings, the cost at the time of loss to repair or replace the damaged property with new materials of like kind and quality for the same use at the described location.

  2. in the case of loss or damage to personal property, the cost at the time of loss of a new article identical to the one damaged, destroyed or stolen. If the identical article is no longer manufactured or is not available, "replacement cost" means the cost of a new article similar to that damaged, destroyed or stolen and which is of comparable quality and usefulness.

- "Residence employee" means an employee of "anyone we protect" who performs duties in connection with the maintenance or use of the "residence premises," including similar duties elsewhere, not in connection with the "business" of "anyone we protect."

- "Residence premises" means the dwelling where "you" reside, including the structures and grounds, or that part of any other building where "you" reside and which is shown as "residence premises" on the "Declarations."

- "Resident" means a person who physically lives with "you" in "your" household. "Your" unmarried, unemancipated children under age 24 attending school full-time and living away from home will be considered "residents" of "your" household.

- "We," "us" or "our" means the Erie Insurance Company.

- "You," "your" or "Named Insured" means the person(s) named on the "Declarations" under "Named Insured." Except in the RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS Section, these words include the spouse of the person(s) named in Item 1. on the "Declarations" provided the spouse is a "resident."

# PROPERTY PROTECTION—SECTION I

## OUR PROMISE—Dwelling Coverage

"We" will pay for loss to:

1. "your" dwelling at the "residence premises" shown on the "Declarations." Dwelling includes attached structures, building equipment, fixtures, including solar panels and windmills servicing the premises.

2. construction material at the "residence premises" for use in connection with "your" dwelling.

This coverage does not apply to land and water, including natural water, above or below the surface of the ground.

## OUR PROMISE—Other Structures Coverage

"We" will pay for loss to:

1. other structures at the "residence premises" separated from the dwelling, including garages, fences, shelters, tool sheds or carports.

   Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

2. construction material at the "residence premises" for use in connection with "your" other structures.

"We" do not pay for loss to structures:

1. used in whole or in part for "business" purposes (except rental or holding for rental of structures used for private garage purposes); or

2. used to store "business" property. However, if the "business" property is solely owned by "anyone we protect," "we" do provide coverage for the structure. The "business" property may not include gaseous or liquid fuel, unless the fuel is in a fuel tank that is permanently installed in a vehicle or craft which is parked or stored in the structure.

This coverage does not apply to land and water, including natural water, above or below the surface of the ground.

## OUR PROMISE—Personal Property Coverage

"We" will pay for loss to:

1. personal property owned or used by "anyone we protect" anywhere in the world.

2. at "your" option, personal property owned by others while the property is on "your" "residence premises."

3. at "your" option, personal property of:

   a. guests and "residence employees" while the property is in X a residence occupied by "anyone we protect;" and

   b. "residence employees" away from the "residence premises" while actually engaged in the service of "anyone we protect."

3

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 21 of 52 PageID #: 21

X 4. at "your" option, building additions, alterations, fixtures, improvements or installations made, or acquired at "your" expense, by "you" to residences occupied by, but not owned by "you" for an amount not exceeding 10% of the amount of insurance under this coverage. Payment will not increase the applicable amount of insurance under this policy.

5. cemetery property, including monuments, headstones, gravemarkers, and urns in which "anyone we protect" has an ownership interest.

X 6. animals, birds and fish, but only while on the "residence premises," for the following perils to the extent covered under PERILS WE INSURE AGAINST:

    a. fire or lightning;

    b. windstorm or hail;

    c. explosion or sonic boom;

    d. riot or civil commotion;

    e. "aircraft" or vehicles;

    f. smoke; or

    g. vandalism or malicious mischief.

7. electronic apparatus and equipment:

X     a. while in or upon a motor vehicle or other motorized land conveyance; and

    b. if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or convey-ance while retaining its capability of being operated by other sources of power.

Electronic apparatus includes cellular phones, fax machines, radios, tape and disc players, and similar equipment or devices for the recording, reproduction, receiving, or transmitting of sound or pictures. Electronic apparatus also includes accessories used in conjunction with such apparatus, including antennas, tapes, wires, records, discs or other media.

When there is loss of tapes, compact discs or similar media by theft from a motor vehicle or other motorized land conveyance, "we" will pay up to $150 for the tapes, compact discs or similar media.

8. personal property usually situated at any residence owned or occupied by "anyone we protect" other than a "residence premises."

9. personal property of a student "we" protect while at a residence away from home. This coverage is not subject to the 10% of Personal Property Coverage under SPECIAL LIMITS—Personal Property Coverage.

"We" do not pay for loss to:

1. land motor vehicles and parts. "We" do cover vehicles not subject to motor vehicle registration which are:

    a. designed to assist the handicapped;

    b. used solely to service the "residence premises;" or

    c. low-power recreational land motor vehicles not designed for use on public roads, but only if they are not built,

customized or altered to surpass a speed of 10 miles per hour and are not a motorized bicycle, moped, skateboard, scooter or motor bike.

2. "aircraft" and parts.

3. electronic apparatus and equipment which is solely powered from the electrical system of motor vehicles or any other motorized land conveyances.

4. property rented or held for rental to others away from the "residence premises."

5. property of roomers, boarders or tenants not related to "anyone we protect."

6. any of the following:

    a. books of account, drawings, or other paper records containing "business" data; or

    b. electronic data processing tapes, wires, records, discs, or other software media containing "business" data. This includes "business" data stored in computers and related equipment.

However, "we" do cover the cost of unexposed or blank records or media.

7. radar detectors.

8. property specifically insured by this or any other insurance.

9. except as provided under SPECIAL LIMITS—Personal Property Coverage, property pertaining to a "business" conducted away from the "residence premises," unless at the time of loss such property is on the "residence premises." However, "we" do not cover such property on the "residence premises" while it is stored, held as samples, or held for sale or delivery after sale.

10. land and water, including natural water, above or below the surface of the ground.

## SPECIAL LIMITS—Personal Property Coverage

Limitations apply to the following personal property. These limits do not increase the amount of insurance under Personal Property Coverage:

| Total Amount Of Insurance In Any One Loss | Description Of Personal Property Subject To Limitations |
| --- | --- |
| $500 | Animals, birds and fish |
| $500 | Money, travelers checks, stored value cards, bank notes, bullion, numismatic property, gold other than goldware or gold-plated ware, silver other than silverware or silver-plated ware, platinum other than platinumware or platinum-plated ware     X |

4

| | | |
|---|---|---|
| | $1,000 | Theft, misplacing or losing of trading cards, including sports cards |
| X | $2,000 | Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, stamps and philatelic property |
| X | $2,000 | Trailers and campers not otherwise insured, whether licensed or not |
| X | $2,000 | Watercraft, including their trailers, whether licensed or not, furnishings, equipment and outboard motors |
| X | $2,000 | Manuscripts |
| X | $3,000 | Theft, misplacing or losing of guns and related equipment |
| X | $3,000 | Theft, misplacing or losing of jewelry, watches, precious and semi-precious stones |
| | $3,000 | Theft, misplacing or losing of furs |
| X | $3,000 | Theft, misplacing or losing of silver-ware, silver-plated ware, goldware, gold-plated ware, pewterware, plat-inumware and platinum-plated ware |
| | $2,500 | Property on the "residence premises" used primarily for "business" purposes conducted on the "residence premises," including property in storage, held as samples, or held for sale or delivery after sale |
| | $500 | Property away from the "residence premises," used primarily for "business" purposes regardless of whether the "business" is conducted on or away from the "residence premises" |
| X | 10% of Personal Property Coverage (but not less than $2,000) | Personal property usually situated at any residence owned or occupied by "anyone we protect" other than a "residence premises." Personal property in a newly-acquired principal residence is not subject to this limitation for the 30 days immediately after "you" begin to move property there. |

## OUR PROMISE—Loss Of Use Coverage

### No Deductible Applies

These coverages are not limited by the expiration of this policy. Coverage also applies to loss at a covered secondary location. "We" will not pay for loss or expense due to the cancellation of any lease or agreement.

This coverage does not apply to loss caused by "fungi," wet or dry rot or bacteria other than as provided under ADDITIONAL PAYMENTS, Fungi, Wet Or Dry Rot Or Bacteria Coverage.

### Additional Living Expenses

If an insured property loss covered under PROPERTY PROTECTION—SECTION I, OUR PROMISE—Dwelling Coverage, OUR PROMISE—Other Structures Coverage or OUR PROMISE—Personal Property Coverage, makes "your" "residence premises" uninhabitable, "we" will pay all reasonable additional living expenses while "you" and members of "your" household reside elsewhere.

Payment will be for the shortest time required to repair or replace the premises or, if "you" choose, for "you" to permanently relocate. These payments will not exceed a 12 month period.

### Fair Rental Value

"We" will also pay for "your" loss of normal rents resulting from the loss, less charges and expenses which do not continue while the rented part of the "residence premises" is uninhabitable. "We" will pay this loss of normal rents only until the rented part is habitable. These payments will not exceed a 12 month period.

### Civil Authority

If a loss from a peril covered under PERILS WE INSURE AGAINST occurs at a neighboring premises, "we" will pay additional living expenses and loss of normal rents for up to two weeks should civil authorities prohibit "you" from occupying "your" premises.

### PERILS WE INSURE AGAINST—Dwelling And Other Structures Coverages

"We" pay for direct physical loss to property insured under the Dwelling And Other Structures Coverages, unless the loss is excluded elsewhere under this policy.

X

### EXCLUSIONS—What We Do Not Cover—Dwelling And Other Structures Coverages

"We" do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:

1. by collapse, other than as provided in ADDITIONAL PAYMENTS, Collapse.

2. caused by freezing by temperature reduction of a plumbing, heating, air conditioning, gutters and drain spouts, or fire protective system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed.

   There is coverage if "you" have used reasonable care to:

   a. maintain heat in the building; or

   b. shut off the water supply and drain the system or appli-ances of water.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 23 of 52 PageID #: 23

3. by freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, deck, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

4. caused by constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning, or fire protective system, or a household appliance.

However, there is coverage if the loss is sudden and accidental.

5. caused by:

   a. termites, vermin, insects, rodents, birds (except glass breakage), skunks, raccoons, spiders, reptiles or bats;

   b. mechanical breakdown, deterioration, wear and tear, marring, inherent vice, latent defect, tree roots, rust or smog;

   c. the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant, pollutant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   d. smoke, unless the loss is sudden and accidental. Smoke from agricultural smudging or industrial operations is not covered even if the loss is sudden and accidental; or

   e. bulging, cracking, expansion, settling or shrinking in ceilings, foundations, floors, patios, decks, pavements, roofs or walls.

   X    If Items a. through e. cause water damage not otherwise excluded, from a plumbing, heating, air conditioning, or fire protective system, household appliance, waterbed or aquarium, "we" cover loss caused by the water. Coverage includes the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. This does not include loss to the defective system or appliance (other than a waterbed or aquarium) from which the water escaped.

6. caused by animals or birds kept by "anyone we protect" or kept by a "residence employee" of "anyone we protect."

7. by theft of property from within a dwelling under construction unless that property has become a part of the building, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

Under Exclusions 1. through 7. any ensuing loss not excluded is covered.

8. by earth movement, due to natural or manmade events, meaning earthquake, including land shock waves, or tremors before, during, or after a volcanic eruption, mine subsidence, sinkhole, landslide, mudslide, mud flow, earth sinking, rising, or shifting. Coverage is provided for direct loss caused by fire, explosion, theft or breakage of glass resulting from earth movement, mine subsidence, sinkhole, landslide, mudslide, mud flow, or earth sinking, rising or shifting.

9. by water damage, meaning:

   a. flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, storm surge or overflow of a body of water. "We" do not cover spray from any of these, whether or not driven by wind;

   b. water or sewage which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

   This exclusion does not apply if Sewers Or Drains Backup Coverage is shown on the "Declarations." However, the amount shown on the "Declarations" is the maximum amount "we" will pay for any one direct loss caused by water or sewage which backs up through sewers or drains, or which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

   c. water below the surface of the ground. This includes water which exerts pressure on, or flows, seeps or leaks through any part of a building or other structure, including sidewalks, driveways, foundations, pavements, patios, swimming pools or decks; or

   d. waterborne material carried or otherwise moved by any of the water referred to in this exclusion.

   This exclusion applies, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

   "We" do pay for direct loss that follows, caused by fire, explosion, sonic boom or theft.

10. by power interruption if the interruption originates away     X
    from the "residence premises." If a covered loss ensues on the "residence premises" as a result of a power interruption originating off premises, "we" will pay for the covered ensuing loss on premises.

11. by war, whether declared or undeclared, discharge of a nuclear weapon (even if accidental), hostile or warlike action in time of peace or war, insurrection, rebellion, revolution, civil war, usurped power, including action taken by governmental authority in defending against such an "occurrence."

12. by nuclear action or radiation or radioactive contamination, however caused. Nuclear action includes nuclear reaction, discharge, radiation or radioactive contamination, whether manmade or occurring naturally.

    Loss caused by nuclear action is not considered loss by fire, explosion, sonic boom or smoke. If loss by fire results, "we" will pay for that resulting loss.

13. by radon gas contamination.

6

14. by the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. "We" do cover loss caused by actions of civil authorities to prevent the spread of a fire caused by a peril covered under PERILS WE INSURE AGAINST.

15. by neglect of "anyone we protect" to use all reasonable means to protect covered property at and after the time of loss or when property is threatened by a peril covered under PERILS WE INSURE AGAINST.

16. by intentional loss, meaning any loss arising from an act committed by or at the direction of "anyone we protect" or any additional insured listed on the "Declarations" with the intent to cause a loss.

17. by acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

18. by the destruction, confiscation or seizure of property by order of any governmental or civil authority. "We" do cover loss caused by actions of governmental or civil authorities to prevent the spread of a fire caused by a peril covered under PERILS WE INSURE AGAINST.

19. by the inability to correctly process, recognize, distinguish, interpret or accept any date or time for loss or damage to electronic data processing equipment, computer networks, computer hardware (including microprocessors either as part of a computer system or operating outside of a system), computer programs, software, media or data.

"We" will not pay for:

   a. any repair, restoration, replacement or modification to correct any deficiencies or change any features or functions; or

   b. loss or damage, regardless of when the electronic data processing equipment, computer hardware, computer programs, software, media or data were purchased, obtained or installed.

20. by weather conditions if any peril excluded by this policy contributes to the loss in any way.

21. caused by, resulting from, contributed to or aggravated by faulty or inadequate:

   a. planning, zoning, development;

   b. design, development of specifications, workmanship; construction,

   c. materials used in construction; or

   d. maintenance

   of or related to property whether on or off the "residence premises" by any person, group, organization or governmental body.

22. by color mismatch because of weathering, fading, oxidizing, or wear and tear between the existing undamaged roof and/or siding on the dwelling and/or structure and new materials used to repair or replace the damaged roof and/or siding on the dwelling and/or structure.

23. by mismatch because materials are unavailable, obsolete, or discontinued between the existing undamaged roof and/or siding on the dwelling and/or structure and new material used to repair or replace the damaged roof and/or siding on the dwelling and/or structure.

24. by "fungi," wet or dry rot or bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot, or bacteria other than as provided under ADDITIONAL PAYMENTS, Fungi, Wet Or Dry Rot Or Bacteria Coverage.

## PERILS WE INSURE AGAINST—Personal Property Coverage

"We" pay for direct physical loss to property insured under the Personal Property Coverage, unless the loss is excluded elsewhere under this policy.

## EXCLUSIONS—What We Do Not Cover—Personal Property Coverage

"We" do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:

1. by collapse, other than as provided in ADDITIONAL PAYMENTS, Collapse.

2. caused by freezing by temperature reduction of a plumbing, heating, air conditioning, gutters and drain spouts, or fire protective system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed.

   There is coverage if "you" have used reasonable care to:

   a. maintain heat in the building; or

   b. shut off the water supply and drain the system or appliances of water.

3. by freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, deck, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

4. caused by constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning, or fire protective system, or a household appliance.

   However, there is coverage if the loss is sudden and accidental.

5. caused by:

   a. termites, vermin, insects, rodents, birds (except glass breakage), skunks, raccoons, spiders, reptiles or bats;

   b. mechanical breakdown, deterioration, wear and tear, marring, inherent vice, latent defect, tree roots, rust, or smog;

7

c. the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant, pollutant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

d. smoke, unless the loss is sudden and accidental. Smoke from agricultural smudging or industrial operations is not covered even if the loss is sudden and accidental; or

e. bulging, cracking, expansion, settling or shrinking in ceilings, foundations, floors, patios, decks, pavements, roofs or walls.

If items a. through e. cause water damage not otherwise excluded, from a plumbing, heating, air conditioning, or fire protective system, household appliance, waterbed or aquarium, "we" cover loss caused by the water. Coverage includes the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. This does not include loss to the defective system or appliance (other than a waterbed or aquarium) from which the water escaped.

6. caused by animals or birds kept by "anyone we protect" or kept by a "residence employee" of "anyone we protect."

7. by theft of property from within a dwelling under construction unless that property has become a part of the building, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

Under Exclusions 1. through 7. any ensuing loss not excluded is covered.

8. by earth movement, due to natural or manmade events, meaning earthquake, including land shock waves, or tremors before, during, or after a volcanic eruption, mine subsidence, sinkhole, landslide, mudslide, mud flow, earth sinking, rising or shifting. Coverage is provided for direct loss caused by fire, explosion, theft or breakage of glass resulting from earth movement, mine subsidence, sinkhole, landslide, mudslide, mud flow, or earth sinking, rising or shifting.

9. by water damage, meaning:

a. flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, storm surge or overflow of a body of water. "We" do not cover spray from any of these, whether or not driven by wind;

b. water or sewage which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

This exclusion does not apply if Sewers Or Drains Backup Coverage is shown on the "Declarations." However, the amount shown on the "Declarations" is the maximum amount "we" will pay for any one direct loss caused by water or sewage which backs up through sewers or drains, or which enters into and overflows from within a sump

pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

c. water below the surface of the ground. This includes water which exerts pressure on, or flows, seeps or leaks through any part of a building or other structure, including sidewalks, driveways, foundations, pavements, patios, swimming pools or decks; or

d. waterborne material carried or otherwise moved by any of the water referred to in this exclusion.

This exclusion applies, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

"We" do pay for direct loss that follows, caused by fire, explosion, sonic boom or theft.

10. by power interruption if the interruption originates away from the "residence premises." If a covered loss ensues on the "residence premises" as a result of a power interruption originating off premises, "we" will pay for the covered ensuing loss on premises. This exclusion does not apply to loss to the contents of refrigerator or freezer units on the "residence premises" (other than contents used for "business" purposes) resulting from either power or mechanical failure.

11. by war, whether declared or undeclared, discharge of a nuclear weapon (even if accidental), hostile or warlike action in time of peace or war, insurrection, rebellion, revolution, civil war, usurped power, including action taken by governmental authority in defending against such an "occurrence."

12. by nuclear action or radiation or radioactive contamination, however caused. Nuclear action includes nuclear reaction, discharge, radiation or radioactive contamination, whether manmade or occurring naturally.

Loss caused by nuclear action is not considered loss by fire, explosion, or smoke.

If loss by fire results, "we" will pay for that resulting loss.

13. by radon gas contamination.

14. by the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. "We" do cover loss caused by actions of civil authorities to prevent the spread of a fire caused by a peril covered under PERILS WE INSURE AGAINST.

15. by neglect of "anyone we protect" to use all reasonable means to protect covered property at and after the time of loss or when property is threatened by a peril covered under PERILS WE INSURE AGAINST.

16. by intentional loss, meaning any loss arising from an act committed by or at the direction of "anyone we protect" or any additional insured listed on the "Declarations" with the intent to cause a loss.

8

17. by acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

18. by the destruction, confiscation or seizure of property by order of any governmental or civil authority. "We" do cover loss caused by actions of governmental or civil authorities to prevent the spread of a fire caused by a peril covered under PERILS WE INSURE AGAINST.

19. by the inability to correctly process, recognize, distinguish, interpret or accept any date or time for loss or damage to electronic data processing equipment, computer networks, computer hardware (including microprocessors either as part of a computer system or operating outside of a system), computer programs, software, media or data.

    "We" will not pay for:

    a. any repair, restoration, replacement or modification to correct any deficiencies or change any features or functions; or

    b. loss or damage, regardless of when the electronic data processing equipment, computer hardware, computer programs, software, media or data were purchased, obtained or installed.

20. caused by, resulting from, contributed to or aggravated by faulty or inadequate:

    a. planning, zoning, development;

    b. design, development of specifications, workmanship, construction;

    c. materials used in construction; or

    d. maintenance

    of or related to property whether on or off the "residence premises" by any person, group, organization or governmental body.

21. caused solely by breakage of eyeglasses, glassware, statuary, marble, bronzes, bric-a-brac, porcelains, jewelry, watches, cameras, photographic lenses and similar fragile articles. There is coverage for breakage of the property by or resulting from fire, lightning, windstorm, hail, explosion, sonic boom, riot or civil commotion, "aircraft," vehicles, smoke (unless caused by agricultural smudging or industrial operations), vandalism or malicious mischief, theft including attempted theft, water unless otherwise excluded, and sudden and accidental tearing apart, cracking, burning or bulging of a steam, hot water or air conditioning system.

22. by dampness of atmosphere or extremes of temperature unless the loss is directly caused by rain, snow, sleet or hail.

23. by damage to property (other than jewelry, watches and furs) being refinished, renovated or repaired.

24. by collision (other than collision with a vehicle), sinking, swamping or stranding of watercraft including their trailers, furnishings, equipment and outboard motors.

25. by theft while at another dwelling or adjacent structures owned by, rented to, or occupied by "anyone we protect" unless "anyone we protect" is temporarily residing there.

This exclusion does not apply to property of a student "we" protect while at a residence away from home.

26. by "fungi," wet or dry rot or bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot or bacteria other than as provided under ADDITIONAL PAYMENTS, Fungi, Wet Or Dry Rot Or Bacteria Coverage.

## ADDITIONAL PAYMENTS

### Automatic Garage Door Opener

"We" will pay up to $500 for loss to personal property, including the garage door, at the "residence premises" resulting from the use or malfunction of an automatic garage door opener.    X

### Collapse

"We" will pay for direct physical loss to insured property caused by collapse of a building or any part of a building. Collapse means the sudden caving in or falling down of a building or part of a building. Collapse of a building, or part of a building must result in the inability of that property to be used for its current intended purpose.

Collapse does not include a building or part of a building that is in danger of collapsing; a building or part of a building that is standing even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, expansions; or part of a building still standing but is no longer attached to another part of the building.

"We" will pay for loss to insured property involving collapse of a building or any part of a building caused by one or more of the following:

1. fire or lightning, windstorm or hail, explosion, sonic boom, riot or civil commotion, "aircraft," vehicles, vandalism or malicious mischief, breakage of glass, falling objects, or weight of ice, snow or sleet;

2. hidden decay, or hidden insect or vermin damage not known to "anyone we protect" prior to the collapse;

3. weight of people, animals, contents or equipment;

4. weight of rain which collects on a roof; or

5. use of defective materials or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

"We" will not be liable for loss under Item 2., 3., 4. or 5. above to the following property unless the loss is a direct result of the collapse of a building or any part of a building:

- cloth awnings;                                                        X
- fences;
- pavements, patios;
- swimming pools, decks;
- underground pipes, flues, drains;

9

- cesspools, septic tanks;
- foundations, retaining walls; or
- bulkheads, piers, wharves or docks.

Payment will not increase the amount of insurance applying to the loss.

## Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery Or Counterfeit Money Protection

### No Deductible Applies

X  "We" will pay up to $2,500 for the legal obligation of "anyone we protect" to pay because of theft, forgery or unauthorized use of any credit or electronic fund transfer card or access device, check or negotiable instrument issued to or registered in the name of "anyone we protect." "We" will also pay for loss each time "anyone we protect" unknowingly accepts counterfeit money. "We" require evidence of loss.

"We" will not pay for loss arising from any "business" operated by "you" or loss caused by "anyone we protect."

When loss is discovered, "anyone we protect" must give "us" immediate notice. If the loss involves a credit or electronic fund transfer card or access device, "anyone we protect" must also give immediate notice to the issuer of the card or access device. Failure to comply with the terms and conditions of the card or access device voids this protection.

X  If a loss occurring during the policy period is discovered within one year after the policy has been cancelled, "we" will pay for the loss. If a prior loss is discovered during the policy period and no other insurance applies, "we" will pay for the loss. "We" have the right to investigate and settle any claim or suit before making payment. Full payment of the amount of insurance ends "our" obligation under each claim or suit.

Repeated losses caused by or involving one person are to be considered one loss.

If a claim is made or suit is brought against "anyone we protect" for liability under the Credit Card, Electronic Fund Transfer Card Or Access Device Protection, "we" will provide a defense. The defense will be at "our" expense, with a lawyer "we" choose.

"We" have the option under Forgery Protection to defend at "our" expense "anyone we protect" or their bank against a suit for the enforcement of payment.

## Debris Removal After Loss

"We" will pay the expense for removal of:

1. debris of covered property following loss under PERILS WE INSURE AGAINST;
2. ash, dust or particles from volcanic eruption that has caused direct loss to a building or property within a building; or
3. fallen trees which cause damage to covered property, provided coverage is not afforded elsewhere by this policy.

If the amount of insurance applying to the loss is exhausted, "we" will pay up to an additional 5% of the amount of insurance applying to the damaged property for removal of debris.

"We" will also pay up to $1,000 per "occurrence" with a limit of $500 per tree for the removal of fallen trees on the "residence premises" if loss is caused by windstorm, hail or weight of ice, snow or sleet even when covered property is not damaged.

## Emergency Removal Of Property

"We" will pay for property damaged in any way while removed from "your" "residence premises" because of danger from an insured peril. Coverage is limited to a 30-day period from date of removal. Payment will not increase the amount of insurance applying to the loss.

## Fire Department Service Charges

### No Deductible Applies

"We" will pay all reasonable fire department service charges to    X
save or protect insured property. Payment is in addition to the amount of insurance applying to the loss.

## Fire Extinguisher Recharge

### No Deductible Applies

"We" will pay expenses incurred to recharge portable fire    X
extinguishers after they are used to fight a fire.

## Fungi, Wet Or Dry Rot Or Bacteria Coverage

"We" will pay up to a total of $10,000 for:

1. direct physical loss to property covered under PROPERTY PROTECTION—SECTION I, OUR PROMISE—Dwelling Coverage, OUR PROMISE—Other Structures Coverage and OUR PROMISE—Personal Property Coverage, caused by, resulting from, or consisting of "fungi," wet or dry rot or bacteria if the direct result of a PERIL WE INSURE AGAINST; and

2. necessary increase in costs which "you" incur to maintain "your" normal standard of living when the "residence premises" is uninhabitable due to a loss caused by, resulting from, or consisting of "fungi," wet or dry rot or bacteria which is the direct result of a PERIL WE INSURE AGAINST.

The $10,000 limit is the most "we" will pay for Items 1. and 2. above.

The coverage provided above is the only coverage under PROPERTY PROTECTION—SECTION I, OUR PROMISE—Dwelling Coverage, OUR PROMISE—Other Structures Coverage, OUR PROMISE—Personal Property Coverage and OUR PROMISE—Loss Of Use Coverage for damage or loss caused by, resulting from, or consisting of "fungi," wet or dry rot or bacteria caused directly or indirectly regardless of any other cause or event contributing concurrently or in any sequence.

10

The $10,000 limit is the most "we" will pay for the cost:

    a. to remove "fungi," wet or dry rot or bacteria from covered property;

    b. to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi," wet or dry rot or bacteria; and

    c. of any testing of air or property to confirm the absence, presence or level of "fungi," wet or dry rot or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is a presence of "fungi," wet or dry rot or bacteria.

The coverage provided above applies only when such loss or costs are the result of a PERIL WE INSURE AGAINST which occurs during the policy period and only if all reasonable means were used to save and protect the property from damage at or after the time of the "occurrence" of the PERIL WE INSURE AGAINST.

If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi," wet or dry rot or bacteria, loss payment will not be limited by the terms of this ADDITIONAL PAYMENT, except to the extent that "fungi," wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this ADDITIONAL PAYMENT.

This is additional insurance and is the most "we" will pay for the total of all loss or costs payable under this ADDITIONAL PAYMENT regardless of the number of locations insured under this coverage or the number of claims made.

### Lock Replacement After Loss

#### No Deductible Applies

X  At "your" request, "we" will pay up to $250 to replace keys and locks to the exterior doors of the "residence premises," as well as keys and locks to "your" other property (autos, boats, etc.), if the keys are stolen during a theft loss. This coverage does not apply to keys and locks pertaining to "business" property.

X  "We" will pay for replacement of automatic garage door transmitters when a transmitter has been stolen. Coverage is also provided for the cost to reprogram the frequency on additional transmitters and/or the control unit box.

### Loss Assessment

"We" will reimburse "you" for an assessment charged against "you" as owner or tenant of the "residence premises" by an association or corporation of property owners, minus any other valid and collectible insurance available to the association or corporation covering the same assessment. Under PROPERTY PROTECTION–SECTION I, the assessment must result from a direct loss to property, owned by all the property owners collectively, caused by any of the PERILS WE INSURE AGAINST.

The most "we" will pay for any one assessment arising out of a single "occurrence" or covered peril, whether under PROPERTY PROTECTION–SECTION I, HOME AND FAMILY LIABILITY PROTECTION–SECTION II, or both, is $5,000 or the amount  X shown on the "Declarations."

If "you" are assessed for a covered water loss, "we" will pay "your" share of the cost of tearing out and replacing any part of an "insured location" necessary to repair the system or appliance.

The policy deductible applies to each dwelling under PROPERTY PROTECTION–SECTION I only.

"We" will not pay if the loss is caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption.

"We" also will not pay for any loss assessments charged by a governmental body.

### Mechanical Servant And Robot Protection

"We" will pay up to $500 for loss to personal property at the  X "residence premises" caused by malfunction of a mechanical servant or robot.

### Nonowned Residences

"We" will pay up to $1,000 for loss by theft, vandalism or  X malicious mischief to residences occupied by, but not owned by "anyone we protect."

### Ordinance Or Law Coverage

If a loss by a PERIL WE INSURE AGAINST occurs to covered property, or the building containing the covered property, "we" will pay for the increased costs incurred due to the enforcement of any ordinance or law that is in force at the time of the loss up to an additional $20,000.

"You" may use this coverage for:

1. the construction, demolition, renovation or repair of the portion of the building damaged by a PERIL WE INSURE AGAINST;

2. the demolition and reconstruction of the undamaged portion of the building if the entire building must be demolished because of damage by a PERIL WE INSURE AGAINST;

3. the removal or replacement of the undamaged portion of the building because of the repair or replacement of the portion of the building damaged by a PERIL WE INSURE AGAINST; or

4. the removal of debris resulting from the construction, demolition, renovation, repair or replacement of Item 1., 2. or 3.

Ordinance Or Law Coverage does not include coverage for:

1. loss in value to any covered building due to the requirements of any ordinance or law; or

Case 3:16-cv-01977    Document 1    Filed 07/29/16    Page 29 of 52 PageID #: 29

2. the cost to comply with any ordinance or law requiring the testing, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, responding to or assessing the effects of any solid, liquid, gaseous or thermal irritant, pollutant or contaminant in or on any covered building.

## Temporary Repairs After Loss

"We" will pay for reasonable and necessary expenses for temporary repairs to protect covered property from further damage after loss by a peril covered under PERILS WE INSURE AGAINST. Payment will not increase the amount of insurance applying to the loss.

## Trees, Shrubs, Plants And Lawns

"We" will pay up to an additional 5% of the amount of insurance under Dwelling Coverage for loss to trees, shrubs, plants and lawns at the "residence premises."

Coverage applies only to loss caused by the following perils covered under PERILS WE INSURE AGAINST:

1. fire or lightning;

2. explosion or sonic boom;

3. riot or civil commotion;

4. "aircraft" or vehicles;

X 5. smoke; or

6. vandalism, malicious mischief or theft.

"We" will not pay for:

1. more than $500 on any one tree, shrub or plant;

2. damage to lawns by vehicles owned or operated by a "resident" of the "residence premises;" or

3. trees, shrubs, plants or lawns grown for "business" purposes.

## DEDUCTIBLE

"We" will pay for loss minus the deductible shown on the "Declarations." Unless otherwise provided in an endorsement, in X the event of total loss to the dwelling from a covered peril, the deductible will not apply.

---

# RIGHTS AND DUTIES—CONDITIONS—SECTION I

## ABANDONMENT OF PROPERTY

"We" are not required to accept abandoned property.

## APPRAISAL

If "you" and "we" fail to agree on the amount of loss, on the written demand of either, each party will choose a competent, disinterested and impartial appraiser and notify the other of the

appraiser's identity within 20 days after the demand is received. The appraisers will select a competent, disinterested and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, "you" or "we" can ask a judge of a court of record in the state where "your" "residence premises" is located to select an umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to "us," the amount agreed upon will be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other expenses of the appraisal. However, if the written demand for appraisal is made by "us," "we" will pay for the reasonable cost of "your" appraiser and "your" share of the cost of the umpire.

"We" will not be held to have waived any rights by any act relating to the appraisal.

This is not an agreement to arbitrate. The appraisers and umpire are only authorized to determine actual cash value or the cost to repair or replace damaged property. The appraisers and umpire are not authorized to determine if a loss is covered or excluded under the policy.

## AUTOMATIC ADJUSTMENT OF COVERAGE AMOUNTS

This policy provides "you" with a guard against the effects of inflation in construction costs for "your" dwelling, other structures and personal property." X

## Dwelling Coverage

The amount of insurance applying to the Dwelling is the "replacement cost" at the time of loss. "We" will adjust the X premium for the next policy period to reflect any change in the "replacement cost."

## Notification Of Improvements To Dwelling

"You" must notify "us" or "our" Agent within 90 days of starting any improvements or additions which increase the "replacement cost" value of "your" Dwelling by $5,000 or more and pay any additional premium due. "Your" premium may be adjusted during the current policy period to reflect the additional amount of insurance. If "you" do not notify "us," "we" do not cover loss to such improvements or changes.

## Other Structures Coverage

The amount of insurance applying to Other Structures Coverage is the amount shown on the "Declarations." "We" will monitor changes to construction costs due to inflation and at the next policy period "we" will adjust the amount of "your" Other Structures Coverage if necessary. "Your" premium will be adjusted at each policy period to reflect any change.

During the policy period, if there is an increase in construction costs due to inflation and a loss occurs, "we" will reflect the increase in the amount of insurance before making payment. There will be no charge for this additional coverage.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 30 of 52 PageID #: 30

If the amount of insurance shown on the "Declarations" for "your" Other Structures Coverage does not adequately cover the value of the property, any adjustments for inflation may not be sufficient to provide full recovery should a loss occur.

If for any reason other than inflation, the amount of insurance shown on the "Declarations" for Other Structures Coverage does not adequately cover the value of the property, the amount of insurance shown on the "Declarations" will be the full amount available should a loss occur.

## Personal Property Coverage

The amount of insurance applying to Personal Property Coverage is the amount shown on the "Declarations." Adjustment in this amount will be made proportionately to the adjustment of Other Structures Coverage.

During the policy period, if there is an increase in costs due to inflation and a loss occurs, "we" will reflect the increase in the amount of insurance before making payment. There will be no charge for this additional coverage.

If the amount of insurance shown on the "Declarations" for "your" Personal Property Coverage does not adequately cover the value of the property, any adjustments for inflation may not be sufficient to provide full recovery should a loss occur.

If for any reason other than inflation, the amount of insurance shown on the "Declarations" for Personal Property Coverage does not adequately cover the value of the property, the amount of insurance shown on the "Declarations" will be the full amount available should a loss occur.

## ERIE OPTION

If "we" give "you" written notice within 30 days after "we" receive "your" signed, sworn statement of loss, "we" may repair or replace any part of the property damaged with equivalent property.

## GLASS REPLACEMENT

Loss to glass caused by a peril covered under PERILS WE INSURE AGAINST will be settled on the basis of replacement with safety glazing materials when required by law.

## INCREASE OF HAZARD

Unless "we" agree beforehand, coverage is suspended if the hazard is substantially increased by any means within the control or knowledge of "anyone we protect."

## LAWSUITS AGAINST US

"We" may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs.

## LOSS PAYMENT

"We" will settle any claim for loss with "you." "We" will pay "you" unless some other person is named in the policy or is legally entitled to receive payment. "We" will pay within 30 days after "we" receive "your" proof of loss and the amount of loss is finally determined by one of the following:

1. "we" have reached an agreement with "you;"

2. there is an entry of final judgment; or

3. there is a filing of an appraisal award on "your" behalf.

## LOSS SETTLEMENT—Dwelling Coverage—Guaranteed Replacement Cost

The increased cost incurred to comply with the enforcement of any ordinance or law is not included under this condition, except for coverage that is provided under ADDITIONAL PAYMENTS, Ordinance Or Law Coverage.

"We" will pay no more than the actual cash value of the damage until the actual repair or replacement is completed. When the repair or replacement is completed, "we" will pay the additional amount "you" actually and necessarily spend to repair or replace the damaged part of the property.

If the property is actually repaired or replaced, payment will not exceed the smallest of the following amounts:

1. the "replacement cost" of that part of the dwelling damaged for equivalent construction and use on the same premises; or

2. the amount actually and necessarily spent to repair or replace the damaged dwelling.

When the loss is both less than $5,000 and less than 5% of the amount of insurance applying to the loss, "we" will pay the "replacement cost" before actual repair or replacement is completed.    X

"You" may disregard the "replacement cost" provision and make claim for loss or damage to buildings on an actual cash value basis. However, "you" still have the right to make claim, within 180 days after the loss, for any additional amounts "we" will be required to pay under this LOSS SETTLEMENT provision.

## LOSS SETTLEMENT—Other Structures Coverage—Replacement Cost

The increased cost incurred to comply with the enforcement of any ordinance or law is not included under this condition, except for coverage that is provided under ADDITIONAL PAYMENTS, Ordinance Or Law Coverage.

"We" will pay no more than the actual cash value of the damage until the actual repair or replacement is completed. When the repair or replacement is completed, "we" will pay the additional amount "you" actually and necessarily spend to repair or replace the damaged part of the property.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 31 of 52 PageID #: 31

If the property is actually repaired or replaced, payment will not exceed the smallest of the following amounts:

1. the amount of insurance applying to the other structures;

2. the "replacement cost" of that part of the other structures damaged for equivalent construction and use on the same premises; or

3. the amount actually and necessarily spent to repair or replace the damaged other structures.

When the loss is both less than $5,000 and less than 5% of the amount of insurance applying to the loss, "we" will pay the "replacement cost" before actual repair or replacement is completed.

"You" may disregard the "replacement cost" provision and make claim for loss or damage to other structures on an actual cash value basis. However, "you" still have the right to make claim, within 180 days after the loss, for any additional amounts "we" will be required to pay under this LOSS SETTLEMENT provision.

## LOSS SETTLEMENT—Personal Property Coverage—Replacement Cost

The increased cost incurred to comply with the enforcement of any ordinance or law is not included under this condition.

1. Payment will equal the cost at the time of loss of a new article identical to the one damaged, destroyed or stolen. If the identical article is no longer manufactured or is not available, "we" will pay the cost of a new article similar to that damaged or destroyed and which is of comparable quality and usefulness. This provision also applies under Damage To Property Of Others coverage as provided under HOME AND FAMILY LIABILITY PROTECTION—SECTION II.

2. "We" also cover the cost of repair or replacement of:
   a. carpeting;
   b. cloth awnings;
   c. household appliances; and
   d. outdoor antennas and outdoor equipment.

3. Under Personal Property Coverage, "we" do not cover on a "replacement cost" basis loss to property:
   a. unless maintained in good and workable condition;
   b. unless repaired or replaced;
   c. which is outdated or obsolete and which is stored or not being used; or
   d. which by its nature cannot be replaced by a new article including, but not limited to, antiques, fine arts, souvenirs, and collectors' items.

When "replacement cost" coverage does not apply because of an exclusion under this section, "we" will pay actual cash value at the time of loss.

"We" will pay no more than the actual cash value of the damage until the actual repair or replacement is completed. When the

repair or replacement is completed, "we" will pay the additional amount "you" actually and necessarily spend to repair or replace the damaged part of the property.

If the damage is actually repaired or replaced, "we" will pay the smallest of the following amounts for any one item of insured property:

1. "replacement cost;"

2. repair cost; or

3. any special limitations described in the policy.

"We" will pay no more than the amount of insurance applying to personal property.

However, when the loss is both less than $5,000 and less than 5% of the amount of insurance applying to the loss, "we" will pay the "replacement cost" before actual repair or replacement is completed.

"You" may make claim for loss on an actual cash value basis and then make claim within one year after the loss for any additional amounts "we" are required to pay under this LOSS SETTLEMENT provision.

## LOSS TO A PAIR OR SET

If there is a loss to a pair or set, "we" may:

1. repair or replace any part of the pair or set to restore it to its value before the loss; or

2. pay the difference between actual cash value of the property before and after the loss.

## MORTGAGE CLAUSE

Loss under Dwelling Coverage or Other Structures Coverage will be payable to mortgagees named on the "Declarations," to the extent of their interest and in the order of precedence.

## Our Duties

"We" will:

1. protect the mortgagee's interests in an insured building. This protection will not be invalidated by any act or neglect of "anyone we protect," any breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions;

2. give mortgagee 30 days prior notice if "we" cancel or refuse   X to continue this policy; and

3. give mortgagee notice if "you" cancel this policy.

## Mortgagee's Duties

The mortgagee will:

1. furnish proof of loss within 60 days after receiving notice from "us" if "you" fail to do so;

2. pay upon demand any premium due if "you" fail to do so;

14

3. notify "us" of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

4. give "us" the right of recovery against any party liable for loss. This will not impair the mortgagee's right to recover the full amount of the mortgage debt;

5. after a loss, permit "us" to satisfy the mortgage requirements and receive full transfer of the mortgage and all securities held as collateral to the mortgage debt; and

6. at "our" request, submit to examinations under oath.

Policy conditions relating to APPRAISAL, LOSS PAYMENT and LAWSUITS AGAINST US apply to the mortgagee.

This condition will also apply to any trustee named on the "Declarations."

## NO BENEFIT TO BAILEE

No bailee will benefit, directly or indirectly, from this insurance.

## OTHER INSURANCE

If both this insurance and other insurance apply to a loss, "we" will pay "our" share. "Our" share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance, except insurance in the name of an association or corporation of property owners.

If there is other insurance in the name of an association or corporation of property owners covering the same property covered by this policy, the other insurance applies first.

## PERMISSION GRANTED TO YOU

Coverage applies even when "your" described dwelling is vacant or unoccupied, except where limited under PROPERTY PROTECTION—SECTION I, EXCLUSIONS—What We Do Not Cover—Dwelling And Other Structures Coverages, Exclusion 2.

"You" may make alterations, additions and repairs to "your" building, and complete structures under construction.

"You" may waive "your" rights to recovery against another involving the insured property. This must be done in writing prior to a loss.

## RECOVERED PROPERTY

If "we" have made payment on property which has later been recovered by "you" or "us," "you" or "we" will notify the other of the recovery. "You" have a right to the recovered property. If "you" elect to have the property, "you" will repay "us" the amount of "our" payment to "you."

## WHAT TO DO WHEN A LOSS HAPPENS

In case of a loss, "anyone we protect" must:

1. give "us" or "our" Agent immediate notice of the loss.
   a. Hail losses must be reported within one year from the date the hail loss occurred.

b. If the loss is due to criminal activity or theft, "you" must also notify the police;

2. do whatever possible to recover and protect the property from further damage. If it is necessary to protect the property, "you" must make reasonable repairs and keep a record of all repair costs;

3. furnish a complete inventory of damaged property including quantity, actual cash value and amount of loss claimed;

4. produce for examination, with permission to copy, all books of accounts, bills, invoices, receipts, other vouchers and other financial information as "we" may reasonably require;

5. show "us" or "our" representative the damaged property, as often as may be reasonably required;

6. at "our" request, separately submit to examinations and statements under oath and sign a transcript of the same;

7. cooperate with "us" in "our" investigation of a loss and any suits; and

8. send "us," within 60 days after "our" request, "your" signed and sworn proof of loss statement which includes an explanation of the following:
   a. time and cause of loss;
   b. "your" interest in the property and the interest of all others involved;
   c. any encumbrances on the property;
   d. other policies which may cover the loss;
   e. any changes in title, use, occupancy or possession of the property which occurred during the policy term;
   f. when required by "us," any plans, specifications and estimates for the repair of the damaged building;
   g. the inventory of damaged property as prepared in Item 3. of this condition;
   h. receipts for any additional living costs as a result of the loss, and records of pertinent rental loss; and
   i. in case of claim under Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery Or Counterfeit Money Protection, an affidavit stating amount, time and cause of loss.

---

# HOME AND FAMILY LIABILITY PROTECTION—SECTION II

*Personal Liability Coverage includes Bodily Injury Liability Coverage, Property Damage Liability Coverage and Personal Injury Liability Coverage.*

## OUR PROMISE—Bodily Injury Liability Coverage And Property Damage Liability Coverage

"We" will pay all sums up to the amount shown on the "Declarations" which "anyone we protect" becomes legally

15

obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period. "We" will pay for only "bodily injury" or "property damage" covered by this policy.

"We" may investigate or settle any claim or suit for damages against "anyone we protect," at "our" expense. If "anyone we protect" is sued for damages because of "bodily injury" or "property damage" covered by this policy, "we" will provide a defense with a lawyer "we" choose, even if the allegations are not true. "We" are not obligated to pay any claim or judgment or defend any suit if "we" have already used up the amount of insurance by paying a judgment or settlement.

## OUR PROMISE--Personal Injury Liability Coverage

"We" will pay all sums up to the amount shown on the "Declarations" which "anyone we protect" becomes legally obligated to pay as damages because of "personal injury" caused by an offense committed during the policy period. "We" will pay for only "personal injury" covered by this policy.

"We" may investigate or settle any claim or suit for damages against "anyone we protect," at "our" expense. If "anyone we protect" is sued for damages because of "personal injury" covered by this policy, "we" will provide a defense with a lawyer "we" choose, even if the allegations are not true. "We" are not obligated to pay any claim or judgment or defend any suit if "we" have already used up the amount of insurance by paying a judgment or settlement.

## OUR PROMISE--Medical Payments To Others Coverage

"We" will pay up to the amount shown on the "Declarations" for the necessary "medical expenses" incurred or medically determined within three years from the date of an accident causing "bodily injury" or "personal injury." This three-year limitation does not apply to funeral expenses.

This coverage does not apply to "you" or regular "residents" of "your" household, other than "residence employees."

To others, "we" will pay only in the following situations:

1. to a person on an "insured location" with the permission of "anyone we protect;" or

2. to a person off an "insured location" if the "bodily injury" or "personal injury:"

   a. arises out of a condition on an "insured location" or adjoining ways;

   b. is caused by the activities of "anyone we protect;"

   c. is caused by a "residence employee" in the course of employment by "anyone we protect;" or

   d. is caused by an animal "anyone we protect" owns or is caring for.

Payment under this coverage is not an admission of liability by "us" or "anyone we protect."

## EXCLUSIONS--What We Do Not Cover

### Bodily Injury Liability Coverage
### Property Damage Liability Coverage
### Personal Injury Liability Coverage
### Medical Payments To Others Coverage

"We" do not cover under Bodily Injury Liability Coverage, Property Damage Liability Coverage, Personal Injury Liability Coverage and Medical Payments To Others Coverage:

1. "bodily injury," "property damage" or "personal injury" expected or intended by "anyone we protect" even if:

   a. the degree, kind or quality of the injury or damage is different than what was expected or intended; or

   b. a different person, entity, real or personal property sustained the injury or damage than was expected or intended.

   "We" do cover reasonable acts committed to protect persons and property.

2. "bodily injury," "property damage" or "personal injury" arising out of "business" pursuits of "anyone we protect."

   "We" do cover:

   a. activities not related to any "business;"

   b. "business" pursuits of salespersons, collectors, messengers and clerical office workers employed by others. "We" do not cover installation, demonstration and servicing operations;                                                  X

   c. "business" pursuits of educators while employed by others as educators, and while acting in the capacity of an educator including corporal punishment of pupils;     X

   d. occasional "business" activities of "anyone we protect." These include, but are not limited to, babysitting, caddying, lawn care, newspaper delivery and other similar activities. "We" do not cover regular "business" activities or "business" activities for which a person is required to be licensed by the state; and                                 X

   e. the ownership of newly-acquired one or two family dwellings, but only for a period of 30 consecutive days after acquisition unless described on the "Declarations."   X

3. "bodily injury," "property damage" or "personal injury" arising out of the rental or holding for rental of the "residence premises" by "anyone we protect."

   "We" do cover if the "residence premises" is:

   a. occasionally rented or held for rental to others as a residence;

   b. rented or held for rental in part as a residence, unless for the accommodation of more than three roomers or boarders; or

   c. rented or held for rental in part as an office, school, studio or private garage.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 34 of 52 PageID #: 34

4. "bodily injury," "property damage" or "personal injury" arising out of the rendering or failing to render professional services. Professional services include, but are not limited to:

   a. any architectural, engineering or industrial design services;

   b. any medical, surgical, dental or other services contributing to the health of persons or animals;

   c. any beauty or barber services;

   d. any legal, accounting or insurance services;

   e. the servicing, installation, or maintenance of computer hardware or software; or

   f. the selling, designing, licensing, consultation, franchising, furnishing or creation of computer hardware or software, including electronic data processing programs, designs, specifications, manuals or instructions.

5. "bodily injury," "property damage" or "personal injury" arising out of any premises owned by or rented to "anyone we protect" which is not an "insured location." This exclusion does not apply to "bodily injury" or "personal injury" to a "residence employee" arising out of and in the course of employment by "anyone we protect."

6. "bodily injury," "property damage" or "personal injury" arising out of the ownership, maintenance or use of:

   a. "aircraft;"

   b. any land motor vehicle owned or operated by or rented or loaned to "anyone we protect."

   "We" do cover motor vehicles if:

   1) they are used solely at an "insured location" and not subject to motor vehicle registration;

   2) they are kept in dead storage at an "insured location;"

   3) they are a recreational land motor vehicle not designed for use on public roads while at an "insured location;"

   X   4) they are a low-power recreational land motor vehicle not designed for use on public roads, but only if they are not built, customized or altered to surpass a speed of 10 miles per hour and are not a motorized bicycle, moped, skateboard, scooter or motor bike;

   X   5) they are a golf cart, wherever used or located;

   X   6) they are a lawn or farm type vehicle or snow blower, wherever used or located, if not subject to motor vehicle registration; or

   7) they are designed to assist the handicapped.

   c. watercraft:

   X   1) owned by or frequently rented to "anyone we protect" if it has inboard or inboard-outdrive motor power of more than 75 horsepower;

   X   2) owned by or frequently rented to "anyone we protect" if it is a sailing vessel 26 feet or more in length; or

   X   3) powered by one or more outboard motors with more than 75 total horsepower owned by "anyone we protect" at the beginning of the policy period.

   X   However, if "anyone we protect" acquires watercraft, regardless of horsepower, coverage applies until liability coverage is obtained under another policy, but no later than the end of the policy period. If the watercraft is acquired within 60 days of the end of the policy period, "we" will provide coverage for a maximum of 60 days. "We" have the right to charge "you" an additional premium.

   Exclusion 6.c. does not apply while the watercraft is stored on shore.

   Exclusion 6. does not apply to "bodily injury" or "personal injury" to any "residence employee" arising out of and in the course of employment by "anyone we protect."

   "We" do not cover liability arising out of the negligent entrustment of an "aircraft," motor vehicle or watercraft excluded in Exclusion 6.

   "We" also do not cover statutorily imposed vicarious parental liability for the actions of a child or minor using an "aircraft," motor vehicle or watercraft excluded in Exclusion 6.

7. "bodily injury," "property damage" or "personal injury" arising out of war (declared or undeclared), civil war, insurrection, rebellion or revolution.

   Discharge of a nuclear weapon is considered a warlike act, even if accidental.

8. "bodily injury" or "personal injury" which arises out of or results from a communicable disease or condition transmitted by "anyone we protect" to any other person.

9. except as provided in paragraph 2.c. under EXCLUSIONS, What We Do Not Cover—Bodily Injury Liability Coverage, Property Damage Liability Coverage, Personal Injury Liability Coverage and Medical Payments To Others Coverage, "bodily injury," "property damage" or "personal injury" which arises out of sexual molestation, corporal punishment, physical abuse or mental abuse by "anyone we protect."

10. "bodily injury," "property damage" or "personal injury" which arises out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed health care professional.

11. "bodily injury," "property damage" or "personal injury" which arises out of the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant, pollutant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 35 of 52 PageID #: 35

12. punitive or exemplary damages and related defense costs.

13. "bodily injury," "property damage" or "personal injury" arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any "fungi," wet or dry rot or bacteria.

"We" do not cover under Bodily Injury Liability Coverage, Property Damage Liability Coverage or Personal Injury Liability Coverage:

1. liability assumed under:
   a. any oral contract or agreement; or
   b. a contract or agreement in connection with any "business" of "anyone we protect."

2. except as provided under HOME AND FAMILY LIABILITY PROTECTION—SECTION II, ADDITIONAL PAYMENTS, Loss Assessment, liability for "your" share of any loss assessment charged against all members of an association or corporation of property owners.

3. "property damage" to property owned by "anyone we protect."

4. "property damage" to property rented to, occupied or used by, or in the care of "anyone we protect." This exclusion does not apply to "property damage" caused by fire, explosion, sonic boom or smoke, or by accidental discharge of water from a waterbed or aquarium.

5. "bodily injury" or "personal injury" to any person eligible to receive any benefits required to be provided or voluntarily provided by "anyone we protect" under any workers compensation, non-occupational disability or occupational disease law.

6. "bodily injury," "property damage" or "personal injury" for which "anyone we protect" is covered under any nuclear energy liability policy, or would be covered if its amounts of insurance had not been exhausted.

7. "bodily injury" or "personal injury" arising out of "business" pursuits of "anyone we protect," other than "business" pursuits covered by this policy.

8. "bodily injury" or "personal injury" to employees of "anyone we protect" arising out of employment.

   This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of employment by "anyone we protect."

9. "personal injury" arising out of willful violation of a law or ordinance by "anyone we protect."

10. "personal injury" arising out of civic or public activities performed for pay by "anyone we protect."

11. suits for libel, slander or defamation of character made against "anyone we protect" if the publication or statement:

    a. took place before the effective date of this insurance; or

    b. was knowingly untrue.

12. "bodily injury" or "personal injury" to "you" and if "residents" of "your" household, "your" relatives, and persons under the age of 21 in "your" care or in the care of "your" "resident" relatives.

Under Medical Payments To Others Coverage "we" do not cover "bodily injury" or "personal injury:"

1. to a "residence employee" if it occurs off an "insured location" and does not arise out of or in the course of employment by "anyone we protect."

2. to any person eligible to receive any benefits required to be provided or voluntarily provided under any workers compensation, non-occupational disability or occupational disease law.

3. from any nuclear reaction, radiation or radioactive contamination, or any consequence of any of these.

4. to "anyone we protect" or other person(s) who resides on the "insured location," except a "residence employee."

## ADDITIONAL PAYMENTS

Payment for the following is in addition to the amounts of insurance shown on the "Declarations."

### Claim Expenses

"We" pay:

1. court costs, to defend or settle as "we" believe proper, any claim or suit against "anyone we protect," for damages covered under this section. "Our" payment of the limit of protection for a settlement, judgment, or deposit in court ends "our" duty to pay under this item.

2. expenses incurred, to investigate and defend or settle as "we" believe proper, any claim or suit against "anyone we protect" for damages covered under this section. "Our" payment of the limit of protection for a settlement, judgment, or deposit in court ends "our" duty to pay under this item.

3. post-judgment interest, but only that portion of the post-judgment interest which accrues on that part of any judgment which does not exceed the limit of protection on a suit "we" defend. "Our" payment, offer in writing, or deposit in court of that part of the judgment that does not exceed the limit of protection ends "our" duty to pay any post-judgment interest which accrues after the date of "our" payment, written offer or deposit.

4. prejudgment interest or delay damages awarded on that part of any judgment that does not exceed the limit of protection. If "we" offer in writing to pay the applicable limit of protection, "we" will not pay any prejudgment interest or delay damages for the period of time after the offer.

X

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 36 of 52 PageID #: 36

5. reasonable expenses "anyone we protect" may incur at "our" request to help "us" investigate or defend a claim or suit. This includes up to $300 a day for actual loss of earnings (but not loss of other income) and vacation time or other benefit loss, limited to those days "anyone we protect" attends hearings or trials at our request.

6. premiums on the following types of bonds, but not for bond amounts greater than the limit of protection:
   a. appeal bond in a suit "we" defend;
   b. up to $500 for a bail bond required because of an accident or related traffic violation involving a vehicle "we" insure; and
   c. attachment bond to release property of "anyone we protect" due to an accident or related traffic violation involving a vehicle covered by this policy.

   "We" have no duty to apply for or furnish such bonds.

7. reasonable lawyers' fees up to $50 which "anyone we protect" incurs because of arrest, resulting from an accident involving a vehicle covered by this policy.

### Damage To Property Of Others

"We" pay, on a "replacement cost" basis, up to $1,000 per "occurrence" for "property damage" to property of others caused by "anyone we protect." This coverage also applies to property of others in the possession of "anyone we protect."

"We" will not pay for "property damage:"

1. to the extent of any amount recoverable under SECTION I of this policy;

2. caused intentionally by "anyone we protect" who has attained the age of 13;

3. to property owned by "anyone we protect;"

4. to property owned by or rented to a tenant of "anyone we protect" or a "resident" of "your" household; or

5. arising out of:
   a. an act or omission in connection with a premises (other than an "insured location") owned, rented or controlled by "anyone we protect;"
   b. "business" pursuits; or
   c. ownership, maintenance or use of a motor vehicle, "aircraft" or watercraft. "We" will pay for "property damage" to a land motor vehicle designed for recreational use off public roads while in the possession of or caused by "anyone we protect" if:
      1) not subject to motor vehicle registration; and
      2) not owned by "anyone we protect."

### First Aid Expenses

"We" will pay reasonable expenses for first aid to other persons and animals at the time of an accident involving "anyone we protect."

### Loss Assessment

"We" will reimburse "you" for an assessment charged against "you" as owner or tenant of the "residence premises" by an association or corporation of property owners, minus any other valid and collectible insurance available to the association or corporation covering the same assessment.

The assessment must result from an "occurrence" covered under HOME AND FAMILY LIABILITY PROTECTION—SECTION II.

The most "we" will pay for any one assessment arising out of a single "occurrence" or covered peril, whether under PROPERTY PROTECTION—SECTION I, HOME AND FAMILY LIABILITY PROTECTION—SECTION II, or both, is $5,000 or the amount shown on the "Declarations."

"We" also will not pay for any loss assessments charged by a governmental body.

# RIGHTS AND DUTIES— CONDITIONS—SECTION II

## DUTIES OF AN INJURED PERSON—MEDICAL PAYMENTS TO OTHERS COVERAGE

The injured person or someone acting on behalf of that person will:

1. give "us" written proof of claim, as soon as possible, under oath if required; and

2. sign papers at "our" request to allow "us" to obtain medical reports and copies of records.

The injured person will submit to mental and physical examination by doctors selected by "us" as often as reasonably required. "We" may pay the injured person or the provider of the services.

## LAWSUITS AGAINST US

"We" may not be sued unless there is full compliance with all the terms of this policy.

No one has the right to make "us" a party to a suit to determine the liability of "anyone we protect."

The legal liability of "anyone we protect" must be determined before suit under Personal Liability Coverage may be brought against "us." This determination may be by a court of law or by written agreement of all parties, including "us."

## LIMITS OF PROTECTION

This insurance applies separately to "anyone we protect." Regardless of the number of people "we" protect, claims made or persons injured, "our" total liability under Personal Liability

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 37 of 52 PageID #: 37

Coverage for damages resulting from one "occurrence," offense, claim or suit will not exceed the amount shown on the "Declarations" for Personal Liability Coverage. All "bodily injury," "property damage" and "personal injury" resulting from one accident or from continuous or repeated exposure to the same general conditions is considered the result of one "occurrence," offense, claim or suit.

"Our" total liability under Medical Payments To Others Coverage for all "medical expense" payable for "bodily injury" and "personal injury" to any one person will not exceed the EACH PERSON amount shown on the "Declarations."

## OTHER INSURANCE

This insurance is excess over any other valid and collectible insurance. However, if the other insurance is specifically written as excess insurance over this policy, the limits of this policy apply first.

If at the time of loss there is other insurance in the name of an association or corporation of property owners covering the same property covered by this policy, the insurance afforded by this policy will be excess over the amount recoverable under such other insurance.

## WHAT TO DO WHEN AN OCCURRENCE, OFFENSE, CLAIM OR SUIT HAPPENS

When there is an "occurrence," offense, claim or suit "anyone we protect" will:

1. notify "us" or "our" Agent in writing as soon as possible, stating:
   a. "your" name and policy number;
   b. the time, place, and circumstances of the "occurrence," offense, claim or suit; and
   c. names and addresses of injured persons and witnesses.

2. give "us:"
   a. promptly, any papers that relate to the "occurrence," offense, claim or suit; and
   b. a signed statement containing all the facts about the "occurrence," offense, claim or suit.

3. at "our" request:
   a. assist in making settlement;
   b. help "us" enforce any right of recovery against any party liable to "anyone we protect;"
   c. cooperate with "us" in "our" investigation of a loss and any suit;
   d. attend hearings and trials;
   e. assist us in securing and giving evidence and in obtaining the attendance of witnesses;
   f. separately submit to examinations and statements under oath and sign transcripts of same;

g. authorize "us" to obtain records and other information;
h. answer all reasonable questions about the "occurrence," offense, claim or suit; and
i. allow "us" to inspect and appraise the damaged property before its repair or disposal.

4. under ADDITIONAL PAYMENTS, Damage To Property Of Others coverage, send "us," within 60 days of "our" request, sworn proof of loss.

5. not make payments, assume obligations or incur expenses, except at one's own cost, other than for first aid to other persons and animals at the time of the "bodily injury."

# RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS—SECTIONS I & II

"We," "you" and anyone else protected by this policy must do certain things in order for the terms of this policy to apply.

## ACCOUNTING

If the premium payment plan chosen for this policy includes a service charge or if additional policy fees are incurred, the service charge or fees are paid to the Erie Indemnity Company.

## ASSIGNMENT

Interest in this policy may be transferred only with "our" written consent. "We" may require evidence that all "Named Insureds" approve the assignment.

## BANKRUPTCY OF ANYONE WE PROTECT

Bankruptcy or insolvency of "anyone we protect" or the estate of "anyone we protect" will not relieve "us" of "our" obligations.

## CANCELLATION AND NONRENEWAL

### Your Right To Cancel

"You" may cancel this policy by mailing or delivering to "our" Agent or "us" written notice stating at what future date "you" want the cancellation to take effect. "We" may waive these requirements by confirming the date of cancellation to "you" in writing.

### Our Right To Cancel

"We" reserve the right to cancel for "your" noncompliance with "our" premium payment plans. "We" do not waive "our" right to cancel, even if "we" have accepted prior late payments.

If "your" policy is cancelled by "you" or "us," "we" will return the pro rata unused share of "your" premium. Cancellation will be effective even if "we" have not given or offered the returned premium.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 38 of 52 PageID #: 38

## Nonrenewal

Should "we" refuse to renew this policy, "we" will do so in compliance with the laws of the state in which "you" reside. "We" will notify "you" before the end of the policy period.

## Method Of Giving Notice

"We" may cancel or refuse to renew this policy or any coverage by mailing "you" written notice stating the effective date of "our" action.

Mailing notice to the address shown on the "Declarations" will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.

## CONCEALMENT, FRAUD OR MISREPRESENTATION

This entire policy is void as to "anyone we protect" if, before or after a loss:

1. "anyone we protect" has intentionally concealed or misrepresented any material fact or circumstance concerning this insurance;

2. there has been fraud or false swearing by "anyone we protect" as to any matter that relates to this insurance or the subject thereof; or

3. "anyone we protect" has engaged in fraudulent conduct as to any matter that related to this insurance or subject thereof.

In the event of Item 1., 2. or 3., "we" will not pay for any loss.

## CONTINUOUS POLICY

This policy is a continuous policy. It will continue in force until cancelled by "you" or terminated by "us" as explained in the CANCELLATION AND NONRENEWAL condition. Each year "we" will send "you" a "Declarations" that shows the premium due for the next policy period.

In return for this service, "you" must mail "us" written notice prior to the new policy period if "you" want to cancel. If "we" do not receive this notice, this policy remains in force and "you" must pay "us" the earned premium due for this time.

## COOPERATION

"You" agree to cooperate with "us" by:

1. truthfully completing and promptly returning questionnaires and audit forms about this insurance;

2. permitting and helping with inspections and audits; and

3. complying with specific recommendations to improve "your" risk.

## HOW YOUR POLICY MAY BE CHANGED

This policy conforms to the laws of the state in which "your" "residence premises" is located. If the laws of the state change, this policy will comply with those changes. "We" will give "you"

the benefit of any changes made by "us" if it does not require additional premium. This change will be effective as of the date "we" implement the changes in "your" state.

"You" may change this policy by asking "us." Asking "our" Agent is the same as asking "us." "Your" request must contain enough information to identify "you." If "we" agree with "your" request, "we" will then issue a "Declarations." If there is a change in the information used to develop the policy premium, "we" may adjust "your" premium during the policy period effective as of the date the change occurred. Premium adjustments will be made using the rules and rates in effect for "our" use.

## OUR RIGHT TO RECOVER FROM OTHERS

After "we" make a payment under this policy, "we" will have the right to recover from anyone else held responsible for the loss. "Anyone we protect" is required to transfer this right to "us" and do nothing to harm this right.

Anyone receiving payment from "us" and someone else for the same loss will reimburse "us" up to "our" payment.

"We" will pay all reasonable expenses "anyone we protect" may incur at "our" request to help "us" recover damages from anyone else held responsible. This includes up to $300 a day for actual loss of earnings, limited to those days "anyone we protect" attends hearings or trials at "our" request.

This condition does not apply under HOME AND FAMILY LIABILITY PROTECTION—SECTION II, OUR PROMISE—Medical Payments To Others Coverage or ADDITIONAL PAYMENTS, Damage To Property Of Others.

## PRIORITY

This insurance will first protect "you," "your" spouse residing in "your" household and then others "we" protect.                X

## SURVIVORS' COVERAGE

If "you" die, the policy will cover:

1. "anyone we protect" who is a member of "your" household at the time of "your" death, but only while a "resident" of the "residence premises;"

2. anyone having lawful possession of insured property until a representative is appointed, but only until the end of the policy period during which "your" death occurs; and

3. "your" legal representative, but only while performing duties as "your" representative and only until the end of the policy period during which "your" death occurs.

## TIME OF INCEPTION

If this policy replaces coverage in other policies which end on the inception date of this policy, but at a different time, then this policy will take effect when the other coverage ends.

Case 3:16-cv-01977   Document 1   Filed 07/29/16   Page 39 of 52 PageID #: 39

## WHEN AND WHERE THIS POLICY APPLIES

This policy applies to losses that occur during the policy period. The policy period is shown on the "Declarations." Unless otherwise specified on the "Declarations," the policy period begins and ends at 12:01 A.M., Standard Time at the stated address of the "Named Insured."

Under PROPERTY PROTECTION—SECTION I, this policy applies to property losses as designated in the specific coverage and at the location(s) insured under this policy. In addition, personal property is covered while located anywhere in the world.

Under HOME AND FAMILY LIABILITY PROTECTION—SECTION II, this policy applies to "bodily injury," "property damage" and "personal injury" losses occurring anywhere in the world.

This policy has been signed on "our" behalf at Erie, Pennsylvania by "our" President and Secretary.

*Terrence Cavanagh*

President

*George M. Laughlin*

Secretary


**Erie Insurance®**

Home Office • 100 Erie Insurance Place • Erie, PA 16530 • 814.870.2000
Visit our website at www.erieinsurance.com

ESH ErieSecure Home (Ed. 6/11) UF-A001

22



Erie Insurance®

Home Office • 100 Erie Insurance Place • Erie, PA 16530 • 814.870.2000
Visit our website at www.erieinsurance.com

ESH ErieSecure Home (Ed. 6/11) UF-A001

ERIE INSURANCE
ERIESECURE
ES00209 (Ed. 1/12) UF-A218

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE ERIESECURE HOME POLICY CHANGE ENDORSEMENT

*(ErieSecure Home)*

## DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in the DEFINITIONS section of the policy.*

## PROPERTY PROTECTION - SECTION I

### OUR PROMISE - Personal Property Coverage

"We" do not pay for loss to:

*Item 8. is deleted.*

### EXCLUSIONS - What We Do Not Cover - Dwelling And Other Structures Coverages

"We" do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:

*Exclusion 19. is deleted.*

### EXCLUSIONS - What We Do Not Cover – Personal Property Coverage

"We" do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:

*Exclusion 19. is deleted.*

### ADDITIONAL PAYMENTS

#### Collapse

*The first paragraph is deleted and replaced with the following:*

"We" will pay for direct physical loss to insured property caused by collapse of a building or any part of a building. Collapse means substantial impairment of the structural integrity of a building or part of a building. Collapse of a building, or part of a building must result in the inability of that property to be used for its current intended purpose.

## HOME AND FAMILY LIABILITY PROTECTION - SECTION II

### EXCLUSIONS - What We Do Not Cover

Bodily Injury Liability Coverage

Property Damage Liability Coverage

Personal Injury Liability Coverage

Medical Payments To Others Coverage

"We" do not cover under Bodily Injury Liability Coverage, Property Damage Liability Coverage, Personal Injury Liability Coverage and Medical Payments To Others Coverage:

*The following exclusion is added:*

14.

    a. actual or alleged "bodily injury" or "personal injury" arising out of the ingestion, inhalation or absorption of lead or lead compounds in any form;

    b. actual or alleged "bodily injury," "property damage" or "personal injury" arising out of any form of lead, or lead compounds;

    c. any legal obligation of "anyone we protect" for indemnification or contribution due to damages arising out of "bodily injury," "property damage" or "personal injury" caused by lead, resulting from paint containing lead or contributed to by any other substance or material containing lead;

    d. "bodily injury," "property damage" or "personal injury" arising out of the actual or alleged:

        1) exposure to or existence of lead, paint containing lead, or any other material or substance containing lead; or

        2) manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead,

    whether or not the lead is now or was at any time airborne as a particle, contained as a product,

1

ingested, inhaled, transmitted in any fashion, or found in any form whatsoever; or

e. any loss, cost or expense arising out of any:

1) request, demand or order that "anyone we protect" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, lead or lead compounds; or

2) claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, lead or lead compounds in any form.

## RIGHTS AND DUTIES - GENERAL POLICY CONDITIONS - SECTIONS I & II

### CANCELLATION AND NONRENEWAL

#### Our Right To Cancel Or Refuse To Renew

*Under CANCELLATION AND NONRENEWAL, the first paragraph under Our Right To Cancel is deleted and replaced with the following:*

"We" may cancel this policy for reasons permitted by the state where "your" "residence premises" is located.

Should "we" cancel this policy, "we" will do so in compliance with the laws of the state in which "your" "residence premises" is located. "We" reserve the right to cancel for "your" noncompliance with "our" premium payment plans. "We" do not waive "our" right to cancel, even if "we" have accepted prior late payments. "Our" cancellation or refusal to continue this policy will not take effect until at least 30 days, except for non-payment of premium after "we" send it. The effective date for cancellation for non-payment of premium will be in compliance with the laws of the state in which "your" "residence premises" is located.

#### Nonrenewal

*The first sentence under Nonrenewal is deleted and replaced with the following:*

Should "we" refuse to renew this policy, "we" will do so in compliance with the laws of the state in which "your" "residence premises" is located.

## OTHER PROVISIONS

All other provisions of the policy apply.

2

ERIE INSURANCE
ERIESECURE
UF-A301 (Ed. 9/11)

# IMPORTANT NOTICE - NO FLOOD COVERAGE

Your basic policy covers losses from many perils. However, it DOES NOT provide coverage for flood loss.

Insurance covering flood loss is generally available through the National Flood Insurance Program.

In an effort to serve you, information about flood insurance and the National Flood Insurance Program can be provided by your ERIE Agent.

ERIE INSURANCE
ERIESECURE
ES00010 (Ed. 6/11) UF-A013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REPLACEMENT COST LOSS SETTLEMENT ENDORSEMENT - DWELLING

*(ErieSecure Home, ErieSecure Rental)*

## DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in the DEFINITIONS section of the policy.*

## PROPERTY PROTECTION - SECTION I

## RIGHTS AND DUTIES - CONDITIONS - SECTION I

### AUTOMATIC ADJUSTMENT OF COVERAGE AMOUNTS

*The Dwelling section of this condition is deleted and replaced with the following:*

**Dwelling Coverage**

The amount of insurance applying to the dwelling is the amount shown on the "Declarations."

"We" will monitor changes to construction costs due to inflation and at the next policy period "we" will adjust the amount of "your" Dwelling Coverage if necessary. Adjustments in Other Structures Coverage and Personal Property Coverage will also be made proportionately. "Your" premium will be adjusted at each policy period to reflect any change in the amount of insurance.

During the policy period, if there is an increase in construction costs due to inflation and a loss occurs, "we" will reflect the increase in the amount of insurance before making payment. There will be no charge for this additional coverage.

If the amount of insurance shown on the "Declarations" for "your" Dwelling Coverage, Other Structures Coverage or Personal Property Coverage does not adequately cover the value of the property, any adjustments for inflation may not be sufficient to provide full recovery should a loss occur.

If for any reason other than inflation, the amount of insurance shown on the "Declarations" for "your" Dwelling Coverage, Other Structures Coverage or Personal Property Coverage does not adequately cover the value of the property, or if "you" made substantial improvements to "your" home and failed to notify "us" to increase the amount of "your" insurance, the amount of insurance shown on the "Declarations" and any adjustment for an increase in construction costs due to inflation will be the full amount available should a loss occur.

### LOSS SETTLEMENT - Dwelling Coverage – Guaranteed Replacement Cost

*This condition is deleted and replaced with the following:*

### LOSS SETTLEMENT - Dwelling Coverage - Replacement Cost

The increased cost incurred to comply with the enforcement of any ordinance or law is not included under this condition, except for coverage that is provided under ADDITIONAL PAYMENTS, Ordinance or Law Coverage.

"We" will pay no more than the "actual cash value" of the damage until the actual repair or replacement is completed. When the repair or replacement is completed, "we" will pay the additional amount "you" actually and necessarily spend to replace the damaged part of the property.

If property is actually repaired or replaced, payment will not exceed the smallest of the following amounts:

1. the amount of insurance applying to the dwelling;
2. the "replacement cost" of that part of the dwelling damaged for equivalent construction and use on the same premises; or
3. the amount actually and necessarily spent to repair or replace the damaged dwelling.

When the loss is both less than $5,000 and less than 5% of the amount of insurance applying to the loss, "we" will pay the "replacement cost" before actual repair or replacement is completed.

"You" may disregard the "replacement cost" provision and make claim for loss or damage to dwellings on an "actual cash value" basis. However, "you" still have the right to make claim, within 180 days after the loss, for any additional amounts "we" will be required to pay under this LOSS SETTLEMENT Condition.

## OTHER PROVISIONS

All other provisions of the policy apply.

# ERIE INSURANCE GROUP PRIVACY NOTICE

The privacy and security of your personal information is important to us. This notice will inform you about our policies and procedures concerning the personal information about you that we collect, maintain and disclose in connection with the insurance policies you obtain from us. In order to offer the highest quality insurance products at the lowest possible rates, we collect, maintain, and, in some instances, disclose "nonpublic personal information" about you. Nonpublic personal information may include your name, address, social security number, wage information, driving record, policy coverages, medical information or credit history. It may also include transaction information such as your premium payment or claims history with us. We appreciate the importance of your personal privacy and are committed to protecting it as we provide for your insurance needs. Questions concerning our privacy policy may be sent to us at Customer Service Department, 100 Erie Insurance Place, Erie, PA 16530. You may also contact us through our Website at www.erieinsurance.com.

## COLLECTION OF INFORMATION

We obtain nonpublic personal information about you from the following sources:

- Your insurance Agent or Producer;
- From you through applications or other forms such as claims forms or underwriting questionnaires;
- Insurance support organizations such as claims reporting services and other parties who provide information on insurance related transactions you have conducted with us, our affiliates, as listed below, or others;
- Consumer reporting agencies.

## WE DO NOT SELL YOUR INFORMATION TO OTHERS FOR MARKETING PURPOSES

Because we respect your privacy, we do not sell, trade or otherwise disclose your identity or any other personal information about you to third parties for their marketing purposes. This includes information we obtain concerning all applicants, customers and former customers. We may, however, share information regarding your transactions with us, with our affiliates, or companies that perform marketing services on our behalf to assist us in providing our products and services to you. These companies are required to keep your information confidential.

## INFORMATION WE MAY PROVIDE TO OTHERS

We only disclose nonpublic personal information about our applicants, customers and former customers as permitted or required by law in conjunction with our normal insurance operations. Here are some examples:

- We may disclose information to others such as our claims adjusters and our attorneys in the processing of an insurance claim;
- We may be required by a court of law to provide information in connection with a legal proceeding;
- We share information with consumer reporting agencies and insurance support organizations;
- We may share information with government agencies which conduct examinations of our procedures.

## SECURITY OF YOUR PERSONAL INFORMATION

While your nonpublic personal information is under our control, access is limited to those employees who have a legitimate business need for such information with respect to your insurance coverages. In accordance with applicable state and federal regulations we maintain physical, procedural and electronic safeguards to protect the privacy and confidentiality of your nonpublic personal information.

## AFFILIATES OF ERIE INSURANCE GROUP

- Erie Insurance Exchange
- Erie Indemnity Company
- Erie Family Life Insurance Company
- Erie Insurance Company

- Erie Insurance Company of New York
- Erie Insurance Property and Casualty Company
- Flagship City Insurance Company
- E I Service Corp.

ERIE INSURANCE
ERIESECURE
ES00579 (Ed. 1/12) UF-A601

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SINKHOLE COLLAPSE ENDORSEMENT - TENNESSEE

*(ErieSecure Condo, ErieSecure Home, ErieSecure Property, ErieSecure Rental, ErieSecure Tenant)*

## DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in the DEFINITIONS section of the policy.*

## PROPERTY PROTECTION - SECTION I

**OUR PROMISE - Dwelling Coverage**

**OUR PROMISE - Other Structures Coverage**

**OUR PROMISE - Personal Property Coverage**

**OUR PROMISE - Building Additions And Alterations Coverage**

"**We**" will cover direct physical loss to covered property caused by:

Sinkhole collapse, meaning actual physical damage to covered property arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

Under PROPERTY PROTECTION - SECTION I, the earthquake and other earth movement exclusions do not apply to sinkhole collapse.

## OTHER PROVISIONS

All other provisions of the policy apply.

ERIE INSURANCE
ERIESECURE
UF-A764 (Ed. 9/14)

# TENNESSEE - NOTICE TO POLICYHOLDERS

## INSURANCE INFORMATION PRACTICE

As part of our procedure for processing your insurance, personal information such as a credit report, prior insurance claims report, and/or motor vehicle record may be obtained concerning you and other individuals proposed for coverage.

In determining whether to renew your policy each year, we may review your credit report or obtain or use a credit based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of your insurance score.

No information from our files will be given to anyone without your written consent, except as allowed by law in order to conduct our business.

You have the right to know the kind of information we have in your file, to have access to that information, and to request correction of information you believe is inaccurate.

We will provide a more detailed description of our information practices, if you so request.

## POLICY SERVICE FEES

**SERVICE FEES** - The following service fees will be applicable to all payment plans.

- **Returned Payment Fee** - A $25.00 charge will be applied to your account if your check or other payment is returned unpaid by your financial institution.
- **Late Fee** - A $10.00 charge will be applied to your account when a cancellation notice is issued on your policy because of non-payment of premium.
- **Reinstatement Fee** - A $25.00 charge will be applied to your account when your policy is reinstated with a lapse in coverage following cancellation of your policy because of non-payment of premium.

If you have any questions concerning Policy Service Fees, please contact your ERIE Agent.

## MULTI-POLICY DISCOUNT CREDIT

If you have an ErieSecure Policy, and either an ERIE Private Passenger Auto Policy, Personal Catastrophe Liability Policy, a Commercial Auto Policy or a qualifying ERIE Family Life Insurance Policy(ies), you may be eligible for a multi-policy discount. The multi-policy discount may be given on both the ErieSecure Policy and the Auto Policy premiums. *(Only one Auto discount can be applied.)*

For additional information on this discount, contact your ERIE Agent for more information.

1

# CLAIMS RATING

In order to keep premiums low for those ERIE INSURANCE Policyholders who have a favorable claims history, ERIE applies a surcharge to individual policies based upon the number of qualified claims that were paid to an insured in a defined timeframe preceding policy inception or renewal. A surcharge applies to new policies if a loss occurred and was paid in the five-year period prior to the policy inception date. Future claims will only be added to the surcharge at renewal if a loss occurred and was paid under this ERIE policy in the seven-year period prior to the renewal effective date. All claims are eliminated from the surcharge after they fall outside of the seven-year period prior to the renewal effective date.

Identity Recovery and flood claims are excluded from Claims Rating. The amount of the surcharge varies based upon the dollar amount paid on the claim and the cause of the loss. A claim will not be counted if the claim payment is fully reduced by salvage and/or subrogation or if loss adjustment expenses are incurred but no damage payment is made.

Your business is important to us. Programs such as Claims Rating allow ERIE to keep the overall rates lower for claims-free business and to continue to provide the best possible service to you at the lowest possible cost. If you have any specific questions regarding Claims Rating, please contact your ERIE Agent.

# ADDITIONAL COVERAGES AVAILABLE

It is important that you occasionally review the coverages and limits of your ErieSecure Policy to be certain your needs are being met. The *Amounts of Insurance* for your Property and Liability Coverages are listed on the accompanying ErieSecure Declarations. Please review these *Amounts of Insurance* to make sure they are adequate in the event of loss.

The following is a few of the optional coverages available to ErieSecure Policyholders for an additional premium.

- **Coverage For Loss Caused By Water Back Up Through Sewers Or Drains**
- **Earthquake Coverage**
- **Theft of Building Materials**
- **Identity Recovery Coverage**
- **Additional Theft Amounts for Jewelry and Watches**
- **Personal Computer Coverage**
- **Dwelling and Other Structures Siding And/Or Roofing Restoration Coverage**
- **Peril Deductible** *(Not Applicable on ErieSecure Condo or ErieSecure Tenant Policies)*

Please contact your Agent if you have any questions concerning your ErieSecure *Amounts of Insurance* or if you are interested in any of these or other optional coverages.

*PLEASE NOTE: Not all coverages are available on all ErieSecure Policies or in all states.*

2

ERIE INSURANCE
ERIESECURE
UF-B587 (Ed. 06/15)

# IMPORTANT NOTICE TO POLICYHOLDER

# TENNESSEE - EARTHQUAKE AND LOSS ASSESMENT COVERAGE FOR EARTHQUAKE DEDUCTIBLE

*(ErieSecure Home, ErieSecure Condo, ErieSecure Tenant, ErieSecure Property, ErieSecure Rental)*

Dear Policyholder:

Effective June 1, 2015 Erie is introducing two new deductible percentage amounts for Earthquake Coverage and Loss Assessment Coverage for Earthquakes. The new deductible percentages are 15% and 20%. We will continue to offer the 5% and 10% deductibles as well.

If you would like to change your deductible amounts or add this coverage to your current policy, please contact your ERIE Agent for more information.



FILED
3:35 ___ PM

JUN 3 0 2016



4725 N. Lois Ave.  P: (813) 254-9300
Tampa, FL 33614  F: (813) 254-1844
KATHRYN STRONG  CLERK
www.SmithKling.com          D.C.

**SMITH KLING THOMPSON**

EXPERIENCE. INTEGRITY. RESULTS.

4725 North Lois Avenue
Tampa, Florida 33614
Telephone: (813) 321-7886
Facsimile: (813) 254-1844
ntejeda@ttglaw.com

# FAX

To: Brian Del Frutte    From: Natali Tejeda-Legal Assistant to
                               Mr. Smith, Kling & Thompson Esq.

Fax: 888-921-3743    Pages: 1

Phone:                Date: March 15, 2016

Re:                   CC:

[X] Urgent    [ ] For Review    [ ] Please Comment    [ ] Please Reply    [ ] Please Recycle

**Comments:**

Please return requested documents via Fax/email or mail:
Fax 813-254-1844
Email: ntejeda@ttglawfl.com
Mail: 4725 N. Lois Ave Tampa , FL 33614

**EXHIBIT**
tabbies
B



# SMITH KLING THOMPSON

EXPERIENCE. INTEGRITY. RESULTS.

March 15, 2016

Via Fax (888) 921-3743.
And Via Mail/
Claims Adjuster: Brian DelFratte
Erie Insurance Group
P.O Box 31229
Knoxville, TN 37930

>           *Re:*     ***Insured's:*** Daniels, Dennis & Debra
>                     ***Claim No.*** 010810147611
>                     ***DOL:*** 7/28/2015
>                     ***Subject Property:*** 3051 Unit Hill Road, Joelton, TN 37030

Mr. DelFratte,

Please be advised that my firm has been retained by Mr. & Mrs. Daniels to represent them in all aspects of the above styled claim. My office has been provided a copy of Mr. & Mrs. Daniels denial letter. Please be advised that Erie Insurance Group Daniel's claim is disputed, and please accept this letter as a request that the claim be reopened for further review by management or as otherwise may be appropriate. Additionally, as it is not currently in our possession, allow this letter to serve as our request for Mr. & Mrs. Daniels certified policy of insurance which was valid during the above referenced claim.

This letter will also serve the purpose of making a **formal demand** for payment authorized pursuant to T.C.A. § 56-7-105. In that regard, Mr. & Mrs. Daniels hereby give formal demand that the insurance policy issued by Erie Insurance Group be honored and that Mr. & Mrs. Daniels claim be paid in full. This demand is being made so that Erie Insurance Group has an opportunity to reconsider its decision on the claim; to give notice of their intent to assert a bad faith claim if it is not paid in full; and to memorialize the fact that a lawsuit will be filed to enforce the insurance contract at issue, plus damages for bad faith as authorized by statute, if the claim is not paid in full. I would request a response within ten (10) days of this letter.

In the event Erie Insurance Group fails to confirm coverage and restore the Insured's' property to its pre-loss condition, my office is in the process of preparing a complaint in this matter and the Insured's will file suit and seek a statutory bad faith penalty. As such, please respond accordingly.

Sincerely,

*Thomas W. Thompson*

Thomas W. Thompson, Esquire
*(Signed electronically in his absence to avoid delay)*

TWT/nt

4725 N. Lois Ave. P: (813) 254-1800
Tampa, FL 33614  F: (813) 254-1844          www.SmithKling.com